# THE WESTERN NATIONAL BANK

*vs.*

# ROBERT H. JENKINS AND ALFRED J. SHRIVER.

### *Mortgages: future advances.*

R. J. loaned money to a realty company for the purpose of aiding it in the building of a number of houses of a certain style and cost upon land being developed by the realty company, upon which land a mortgage was given to secure the loan; checks for the money loaned were drawn by R. J. to the order of the realty company; by it the checks were endorsed for "deposit to the account of A. J. S.," trustee in the matter of the realty company for R. J.; it had been agreed that the payment should be so made and that the trustee A. J. S. should make payment on account of the houses as the work progressed to different stages, according to plans and specifications of the same left with the trustee; there was no provision for any future loans or advances from R. J. to the realty company, and no evidence that any such were ever made or contemplated: *Held,* that such a mortgage was not a mortgage for future advances in violation of the provision of section 2 of Article 66 of the Code.                                        p. 253

*Decided June 28th, 1917.*

Appeal from the Circuit Court of Baltimore City. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joseph C. France and Frank B. Ober,* for the appellant.

*Vernon Cook* (with a brief by *Alfred Jenkins Shriver* and *Vernon Cook,* and a supplemental brief by *Edgar H. Gans*), for the appellees.

BURKE, J., delivered the opinion of the Court.

The Roland Realty Company, a building corporation, hereinafter called the Realty Company, executed and delivered a mortgage to Alfred Jenkins Shriver on certain property described in the mortgage to secure the payment of three negotiable promissory notes made by the mortgagor to the order of the mortgagee. One of these notes was for the sum of $62,700.00, and payable one year after its date, and the other two being for the interest to accrue on said principal sum,— each being for the sum of $1,881.00, and payable in six and twelve months respectively after date. The notes and mortgage were dated the 1st day of August, 1911, and the mortgage was recorded among the Land Records of Baltimore City. A second mortgage on the property, bearing the same date, was executed by the Realty Company and delivered to Alfred Jenkins Shriver to secure the payment of the sum of $5,000.00 and interest thereon.

The circumstances, briefly stated, under which these mortgages were made are as follows: On July 11, 1911, an application was made by the Realty Company to Alfred Jenkins Shriver for a mortgage loan on property located on the north side of 37th street, in the City of Baltimore, between Chestnut and Elm avenues. The application stated that it was proposed to erect upon the land a certain number of dwellings therein described, which it was represented in the application would cost between twenty-one and twenty-two hundred dollars each; and further that the actual cost of the land to the appellant was $15,333.33. Certain representations as to improved land and sales in the locality were also made. The amount of the loan applied for was $66,000.00 at 6% payable semi-annually for one year, and the appellant agreed to give a bond of a Baltimore City bonding company for the amount of the mortgage for the completion of the buildings.

It also agreed to pay a commission of 5% on the amount of
the mortgage loan and a title fee,— the amount of which was
not at that time fixed, but which was subsequently agreed to
be 1% of the mortgage loan. The applicant further stated
that it expected to provide the additional money, over and
above the mortgage loan, necessary to complete the buildings
from the sale of other real estate and general credit. This
application was made by Charles L. Fulton on behalf of the
Realty Company. Mr. Shriver brought the application to
the attention of Robert H. Jenkins, who agreed to make a
mortgage loan of $62,700 instead of $66,000 as applied for,
—it having been found that the dwellings proposed to be
built could be erected for a less sum than that stated in the
application. This reduced amount was satisfactory to the
applicant, and it agreed to accept it. The loan was to be put
through either on July 26th or August 1, 1911. There is
some conflict in the evidence upon this, but it is not of any
importance in this case.

The Realty Company was not able to give the completion
bond provided for in the contract, but it gave a bond with
individual sureties. It was agreed that Mr. Jenkins should
draw his checks to the order of the mortgagor for the amount
of the loan, who in turn should pass the money over to Alfred
Jenkins Shriver, as trustee, for deposit as a special fund in
the Western National Bank, and applied by him to the con-
struction of the buildings in accordance with a schedule of
payments agreed upon by the parties. The Realty Company
did not have title to the land on July 26, 1911, but it expected
to perfect its title by August 11, 1911. As Mr. Shriver was
about to leave the city, the following things took place on
July 26, 1911, in connection with the loan. On that day two
checks were drawn by Robert H. Jenkins as follows:

"Baltimore, July 26th, 1911.

The National Bank of Baltimore:

Pay to the order of the Roland Realty Company
forty-two thousand, seven hundred dollars.

$42,700.00.                Robert H. Jenkins."

This check was endorsed as follows:

"1.   Pay to the order of Alfred J. Shriver, Trustee in the matter of the Roland Realty Company for R. H. Jenkins.

> Roland Realty Company,
> by Charles L. Fulton, President."

"2.   For deposit to acct. of Alfred J. Shriver, trustee, in matter of Roland Realty Company, for R. H. Jenkins, per Z. Bond Evans."

"No. 6.        Baltimore, Maryland, July 26th, 1911.
        Maryland Trust Company:

Pay to the order of Roland Realty Company twenty thousand dollars.

> Robert H. Jenkins."

The endorsement on this check was as follows:

"1.   Pay to the order of Alfred J. Shriver, trustee, in the matter of the Roland Realty Company, for R. H. Jenkins.

> Roland Realty Company,
> by Charles L. Fulton, President."

"2.   For deposit to account of Alfred J. Shriver, trustee, in the matter of the Roland Realty Company, for R. H. Jenkins per Z. Bond Evans."

The checks were delivered to the Realty Company, and Z. Bond Evans, whose endorsements appear thereon, was a clerk in Mr. Shriver's office. These checks were deposited in the Western National Bank under the above endorsements and were, paid, and the proceeds carried to the credit of Mr. Shriver, as trustee, in that bank. On the deposit book of the bank the following notation appears:

"Western National Bank of Baltimore; July 26. Cash, $62,700. Alfred J. Shriver, Trustee, in the matter of Roland Realty Company, for R. H. Jenkins."

The bank agreed to pay 3% on the deposits. The two mortgages were executed on July 26th, 1911, and held by direction of Mr. Shriver until August 1, 1911, when it was expected that the mortgagor would then have title, and the transaction would be finally closed.

Upon the return of Mr. Shriver to the city about September 17, 1911, he found that the transaction had not been put through as previously arranged. Mr. Robert H. Jenkins became apprehensive about the loan, and expressed a desire to call it off. After a number of interviews between Alfred Jenkins Shriver and Charles L. Fulton, the Realty Company entered into the following agreement on October 4, 1911, under which the loan was made:

"Roland Realty Company, in connection with the construction of thirty-three houses on the north side of Thirty-seventh street and concerning the deposit of sixty-two thousand, seven hundred dollars in the Western National Bank:

"Whereas the Roland Realty Company has agreed to execute and deliver for the purpose of having the same recorded certain mortgages, being dated the 1st day of August, 1911, to Alfred Jenkins Shriver, who in turn is about to assign the mortgage for sixty-two thousand, seven hundred dollars to Robert H. Jenkins;

"And whereas bonds have been executed of date of August 1st by the said Roland Realty Company, and certain sureties therein named to secure the completion of thirty-three houses on Thirty-seventh street between Chestnut and Elm avenues, and which lots of ground are fully referred to in said mortgage;

"And whereas it was agreed for the purpose of insuring the prompt construction of said houses according to the terms of said bond, according to the plans and specifications referred to in said bonds, and especially that they should be completed within the period of time mentioned in said bonds, that the title to said property, subject to said mortgages, would be transferred to Alfred J. Shriver, trustee, by a deed duly exe-

cuted and acknowledged, but to be held by said trustee and not recorded until some default should occur in constructing said thirty-three houses according to the provisions indicating the periods of time within which the stages of construction should proceed as hereinafter set forth in the schedule attached hereto, or that some default should occur in any of the covenants of said mortgages.

"And it is also agreed that should any such default occur that said deed shall, at the option of the trustee is hereby fully authorized and empowered to take possession of said property, and either, in his discretion, to complete said houses from the funds on deposit in the Western National Bank, and should additional funds be necessary he is further authorized to borrow other funds that may be necessary to complete said houses according to said plans and specifications, and he shall have full power to sell, lease, mortgage or otherwise dispose of said property, in his discretion, for the purpose of executing all the agreements in connection therewith, and after deducting all expenses which he may incur for the purpose of completing said houses, including the usual commissions to the trustees, commissions to a builder, if it may be necessary to employ a builder, at 10 per cent., the usual commissions to real estate brokers for the purpose of either leasing, selling or mortgaging said property, and he shall pay the balance, if any, to the said Roland Realty Company.

"It is also agreed that the said trustee may, on the demand of the mortgagee, return the remainder of said fund to the mortgagee, should any such default occur, or he may, at the option of the said mortgagee, apply the same to the completion or construction of said houses.

"Should any such default occur in the completion or the construction of said houses, the trustee shall have J. S. Downing or some other experienced builder examine said houses and certify to the trustee that the

work has not progressed according to the schedules hereinafter set forth and according to the plans and specifications and the bond, and the period of four days shall elapse from the time that the trustee may mail any such notice to said Roland Realty Company at its office in the City of Baltimore, at 1024 Fidelity Building, before the trustee shall declare a default and take possession of the property, the trustee may, in his discretion, for good and reasonable cause shown, waive any default. And it is further agreed that should any default occur that interest paid by the Western National Bank shall be paid over to the mortgagee, but the amount of interest so paid shall be credited to the said the Roland Realty Company on account of the interest due on the mortgage. Should the interest on the mortgage not be paid when due, the trustee is hereby authorized to pay the interest and to deduct the same from the payments due to said Roland Realty Company for work done and due to it for the construction of said houses.

"It is agreed that the work of constructing said houses shall begin without any delay on the fifth day of October, and it is agreed that it shall be completed as to the stages of completion and within the periods of time hereinafter set forth in the schedules attached hereto and which is considered a part hereof.

"In testimony whereof witness the corporate seal of the said Roland Realty Company and the signature of its President.

                    Roland Realty Company,
        (Seal)              By Charles L. Fulton,
                                    President."

Before this paper was executed Mr. Shriver assigned the mortgage to Mr. Jenkins by assignment dated October 1, 1911. Attached to this agreement was a schedule of items and the periods of time within which the houses should be completed, and the times when the amounts Mr. Shriver, as trustee, should pay to the Realty Company out of the special deposit for the construction of the houses.

The work of construction began promptly, and Mr. Shriver, as trustee, paid out of the trust fund during the course of the work the sum of $40,425, and the balance of the special deposit, as will hereafter be seen, was used in the completion of the dwellings.

In the application for the loan the Realty Company stated, as we have said, that it expected to get the additional money needed for the completion of the dwellings from the sale of other real estate and from general credit. This credit is obtained at the Western National Bank which began on July 28, 1911, to make loans to the Realty Company upon its promissory notes endorsed by Charles L. Fulton and David M. Fulton. It began these loans with no idea of a mortgage security,—relying largely upon what it supposed to be the financial responsibility of David M. Fulton—, and continued them until September 19, 1912, at which time the indebtedness of the Realty Company to the bank upon demand loans amounted to $35,000.00. About that date the bank deemed it advisable to get from the Realty Company some further security. This matter was turned over to Mr. W. Burns Trundle, its counsel, who caused an examination of the title of the Realty Company's property to be made. The bank knew of the Jenkins and Shriver mortgage at the time it began advancing money to the Realty Company, and David M. Fulton testified that he told the bank that the money deposited "covered this piece of property, and that amount of money was expected to build the houses,—to be drawn out at certain intervals as the houses were built." Mr. Trundle, after the examination of the title, reported to the bank "that from the facts stated in connection with the mortgage of the Roland Realty Company to Alfred Jenkins Shriver and the advances made by him, Alfred Jenkins Shriver, to said company, after the date of the mortgage, that it was evidently intended to be a mortgage to secure future advances." With full knowledge of the two mortgages, and after being advised by its counsel, the bank procured a mortgage from the Realty Company to Edwin T. Dickerson, who was acting in its be-

half, for $35,000.00.   This mortgage was dated September 21, 1912, and was assigned by Mr. Dickerson to the bank on October 11, 1912.   The bank then notified Mr. Shriver that the Jenkins mortgage was void, and that the Dickerson mortgage was the only valid lien on the property, and also informed him that the bank proposed to attack the mortgage. Subsequently it was discovered that the Realty Company owed large sums to material men for building materials which had gone into the property, and to workmen, and the bank advanced the money to pay these obligations, and took a fourth mortgage in the name of Mr. Dickerson for $10,400. This mortgage was dated October 25, 1912.   Then ensued conferences and lengthy correspondence between Mr. Shriver and the counsel for the bank as to the rights of the respective mortgagees.

The work on the buildings had ceased, and suggestions were made that Mr. Shriver use the unexpended money in bank to complete the buildings.   Default had occurred in the mortgage covenants, and the Realty Company had defaulted under the agreement of October 4, 1911.   The bank insisted that the Jenkins and Shriver mortgages were invalid, and that it had held the only valid lien on the property; Mr. Shriver insisted that the Jenkins and his own mortgage were valid, and stood unmovable upon his rights and obligations under the agreement of October 4, 1911, and refused to advance any more money except in conformity to the provisions of that instrument.   In the meanwhile the buildings, in their unprotected and uncompleted condition, were rapidly depreciating.   Mr. Jenkins procured a decree for the foreclosure of his mortgage, and Howard Wilcox was appointed trustee to make the sale.

On February 12, 1913, the bill in this case was filed by the Realty Company and Samuel H. Barton, a lessee of certain of the lots, against Robert H. Jenkins, Alfred Jenkins Shriver, Alfred J. Shriver, trustee, Howard C. Wilcox, trustee, the Western National Bank, and Edwin T. Dickerson. The prayers of the bill were:

"1.   That a receiver may be appointed by this court
to take charge of said houses and of the remainder of
said fund on deposit in the Western National Bank to
the credit of Alfred J. Shriver, trustee as aforesaid,
and to proceed with the completion of said houses, and
for said purpose to make use of said fund so far as the
same may be necessary.

"2.   That the said Robert H. Jenkins and Alfred
J. Shriver, individually and as trustee, as aforesaid,
and the said Howard C. Wilcox, trustee as aforesaid,
may be enjoined temporarily and permanently from
further proceeding in said foreclosure suit, and par-
ticularly from making sale of the said property under
the foreclosure decree as advertised or otherwise.

"3.   That your orators may have such other or fur-
ther relief as their case may require."

All the defendants, except Mr. Wilcox, trustee, answered
the bill, and on the 15th day of May, 1913, the Court passed
a decree by which Alfred Jenkins Shriver was appointed
trustee to take charge of the property and also of the unex-
pended balance of the mortgage money remaining in the
Western National Bank, and to use that sum in completing
the houses.   He was also empowered to sell the property.
The fourth, fifth, sixth and seventh paragraphs of the decree
are here transcribed:

"4.   That in completing the houses hereinbefore
mentioned the said receiver shall first use the sum of
$22,475.00 now on deposit with the Western National
Bank above mentioned, and the accrued interest there-
on, which amounts to 3 per cent. from August 1, 1912,
and that in the event that said sum and interest is in-
sufficient to complete said houses according to the origi-
nal plans and specifications thereof, and to make the
same salable as above stated, that then the Western
National Bank shall furnish all such further sums of
money as may be necessary for that purpose.

"5.   That said receiver shall pay out of said fund
on deposit in the Western National Bank the court

costs and expense, amounting to about $80.00, incurred in connection with the foreclosure proceedings in the case filed in this court by Robert H. Jenkins against the Roland Realty Company; said amount not to be charged against or deducted from the mortgage claim of said Robert H. Jenkins.

"6.    The said Robert H. Jenkins and Western National Bank shall be entitled to a first lien on all the property herein mentioned; the said Robert H. Jenkins to have such lien for the above sum of $22,475.00 with the interest which shall have accrued thereon as above set out, and said Western National Bank to have a lien for all such sums as may be advanced by it under the terms of this decree; said liens to cover said property not only for the principal sums above mentioned, but also for interest on the same at the rate of 6 per cent. per annum from the time such sums are paid to the receiver until they are repaid by him; and it is further ordered that out of the proceeds of the sale of the houses as they shall be sold from time to time by said receiver, there shall be paid to the said Robert H. Jenkins the amount of the deposit in the Western National Bank, with interest on the same as above set out, and when said sums shall have been fully paid and returned to the said Robert H. Jenkins, that then from the proceeds of subsequent sales there shall be paid the said Western National Bank the amount of money that shall have been advanced by it under the terms of this decree to the receiver, together with interest on the same, as above set out.

"7.    That all questions of rights and priorities not expressly covered herein between the various parties mentioned in the pleadings in this case are hereby reserved for the further decision of this court, and the distribution of all proceeds of sale over and above the amounts required to reimburse the said Robert H. Jenkins and the said Western National Bank for the sums advanced to the receiver under this decree as above

set forth, shall be held subject to the further order of the court."

By an auditor's report filed January 24, 1917, it appears that there is a balance in cash in the hands of the receiver of $31,362.00 and unsold property of the value of $11,017.00. These two amounts are not sufficient to pay the balance due on the Jenkins mortgage, or the mortgages of the bank, and both mortgagees,—Jenkins and the bank,—are claiming the the fund in this case. The lower Court awarded the fund to Mr. Jenkins, and the appeal in this case was taken by the Western National Bank from that decree.

The sole ground upon which the Western National Bank assails the Jenkins mortgage is that it is alleged to be a mortgage to secure future advances or loans, and since the amounts of the same and the times when they were to be made are not specifically stated in the mortgage, the mortgage is void under *Section 2, Article 66 of the Code*. Mr. Jenkins acted in absolute good faith in the transaction, and it is not claimed that he had in contemplation an evasion of the provision of the Code referred to.

Prior to the *Act of 1825, Chapter 50*, the validity of mortgages in this State to secure future loans or advances was well recognized, and in the absence of statutory prohibition they were so regarded wherever the common law prevailed. Their use and convenience grew out of the necessities of trade and commerce, and were availed of by merchants and bankers, to provide for continuous dealings and security for debts, balances, and obligations to accrue at any future time. Judge Story, in *Leeds v. Cameron,* 3 Sumn, 488, said that: "Nothing can be more clear, both upon principle and authority, than that at common law, a mortgage *bona fide* made may be for future advances and liabilities for the mortgagor to the mortgagee, as well as for present debts and liabilities.". See also *Wilson v. Russell,* 13 Md. 530. Mortgages for future advances are still valid in this State. Neither the *Act of 1825, Chapter 50*, nor the *Act of 1872, Chapter 213*, forbids

them.   They are statutory regulations,—not prohibitions,—
of such mortgages.   The first act was intended to limit the
effect and operation of such mortgages by confining the lien
of the mortgage to the principal sum or sums specified and
recited in the mortgage.   The evils which this act was in-
tended to remedy are fully stated in *Cole* v. *Alberts,* 1 Gill,
412, which will be presently referred to.   Under the Act of
1825, it was not required that in a mortgage to secure future
loans or advances the amounts of the future advancements
and when they should be made should be stated in the mort-
gage, but this requirement was added by the Act of 1872,
Chapter 213, which provides that: "No mortgage to secure
such future loans or advances shall be valid unless the amount
or the amounts of the same, and the times when they are
made shall be specifically stated in said mortgage," etc.

   The real questions in this case are: *first,* what is a mort-
gage for future loans of advances; and *secondly,* is the Jen-
kins mortgage such a mortgage?   These questions upon the
facts and circumstances in this case, considered in connection
with the law, common and statutory, upon the subject of
mortgages for future loans and advances, appear to us to pre-
sent no real difficulty.   In the case of *Maus* v. *McKellip,*
38 Md. 231, JUDGE ROBINSON said: "In *Cole* v. *Albers,* 1
Gill, 423, the construction and purposes for which the Act
of 1825 was passed, were fully considered by this Court.   In
that case the mortgage was to secure the mortgagees to the
extent of $10,000.   It appeared in evidence, that, at the time
of its execution, a much less sum was due from the mort-
gagor, but that the mortgagees were responsible for other
sums on account of the mortgagor, and that it was the inten-
tion of the mortgagor, as shown upon the face of the mort-
gage, to protect them to the amount of the $10,000, men-
tioned as the consideration.   The Court held the mortgage
was a valid security to the amount of $10,000, because that
sum being mentioned in it, no one could be deceived or prej-
udiced.   'The design of the law-makers,' says JUDGE ARCHER,
'in the passage of the Act of 1825, Chapter 50, was to pre-

vent liens on property to the prejudice of creditors, for amounts and claims never contemplated by the parties at the time of its execution, and of which the deed by its terms gave no notice; as if a deed were executed to cover a mortgagee against all future liabilities of any and every description, which the mortgagor might incur or be responsible for to the mortgagee. * * * A practice prevailed anterior to the Act of 1825, Chap. 50, of taking mortgages for specified sums of money, greatly below the value of the mortgaged premises, with a clause or clauses providing that the mortgaged premises should be held as a security for all future liabilities or advances by the mortgagee to the mortgagor, by which means the creditors of the mortgagor were defrauded, sometimes by fraudulent combinations between the mortgagor, and mortgee, or by the acts of the mortgagee alone, who, after the known insolvency of the mortgagor, purchased up liabilities of the mortgagor at depreciated rates, and held them as liens on the mortgaged premises for their nominal amounts; * * * such transactions the law was designed to meet.' We have thus quoted at length the opinion of the Court, because it in the construction and purposes of the Act of 1825 are fully considered.

"It will thus be seen that although the Act of 1825, codified in Article 64 of the Code (1860, § 2; 3), was directed against any other or different principal sum or sums of money than the principal sum or sums that shall appear on the face of the mortgage, *that is, against new loans or debts, not contemplated by the parties at the time of the execution of the mortgage, but contracted subsequently and attached to the original debt by a new and springing contract between the parties.*"

The facts show that Mr. Jenkins passed over to the mortgagor at the time of the execution of the mortgage the entire consideration stated in the mortgage, and took the promissory note of the mortgagor for that sum. It was not contemplated or suggested that he should make any further loans. The money was turned over to Mr. Shriver, trustee, to be held

and applied by him in the construction of the buildings under the terms of the agreement of October 4, 1911, and the entire amount of the mortgage loan has been so applied. The trustee was holding the money in trust for the parties. The use, and possession, and dominion over the money had passed from Mr. Jenkins. Whose money was it that the trustee was holding? Certainly it did not belong to Mr. Jenkins. That it was really the money of the Realty Company which it had borrowed from Mr. Jenkins, and which the trustee was holding for its benefit under the provisions of the trust agreement is shown by the fact that it received from the trustee more than $40,000 of the fund prior to the commencement of this litigation, and has since secured the application of the whole balance to the completion of the houses. Mr. Jenkins contemplated and entered into no scheme to evade the law, as was done in *Baltimore High Grade Brick Co.* v. *Amos,* 95 Md. 571, which, upon the controlling facts, was wholly and entirely different from the facts appearing in this record. We, therefore, hold that the Jenkins mortgage is not a mortgage to secure future loans or advances within the meaning of *Section* 2, *Article* 66 *of the Code,* and that it constituted a first lien upon the mortgaged property. The decree of the lower Court properly awarded the fund in the hands of the receiver to Mr. Jenkins, and the decree will be affirmed.

As to the second mortgage to Alfred Jenkins Shriver for $5,000, Mr. Shriver did not appeal from the decree, and as there is no money in the hands of the receiver to be applied to his mortgage, we do not find it necessary to pass upon its validity.

*Decree affirmed, with costs.*