# NEW BALTIMORE LOAN AND SAVINGS ASSOCIATION.

*vs.*

## CLARENCE C. TRACEY ET AL.

*Mortgage Foreclosure—Amount Secured—Payment to Building Contractor—Right of Appeal.*

Where a loan association, having a mortgage to secure a loan made for the erection of a building on the property, credited the borrower on its books with the amount of the loan, subject to an agreement that the fund should be paid out on the approval of the association's attorney as the building progressed, and subsequently the association gave checks to the mortgagor on account of the loan, some of which checks, endorsed by him to the builder, were left by the latter with the association for its protection, the association crediting the builder with the amount of such checks, *held* that the amount of such checks was to be regarded as having been paid by the association to the mortgagor, for the purpose of computing the amount due under the mortgage, this being necessary to protect the builder as against a second mortgagee, who was fully informed as to the circumstances.                    pp. 216-219

A building mortgage to secure a named sum, which sum was credited to the borrower on the books of the lender, a loan association, and was to be paid over as the building progressed, was not invalid as a mortgage to secure future advances.  p. 219

A decree by which the mortgagee under a building loan mortgage was disallowed part of the amount advanced by it under the mortgage, so affected the interest of the mortgagee as to support an appeal by it, although the amount disallowed represented a sum which was retained by the mortgagee under an agreement with the building contractor, and was eventually to be paid by it to the contractor.                    p. 220

*Decided January 10th, 1923.*

Appeal from the Circuit Court of Baltimore City (STUMP, J.).

Exceptions, by the Manhattan Land Corporation and Clarence C. Tracey and wife, to auditors' accounts distributing the proceeds of sales of land under certain mortgages. From decrees sustaining the exceptions, the New Baltimore Loan and Savings Association appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, URNER, STOCKBRIDGE, and ADKINS, JJ.

*Benjamin H. McKindless* and *Allan W. Rhynhart,* for the appellant.

*Alexander Preston* and *William Ewin Bonn,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

Although the only order for an appeal in this record is: "Mr. Clerk: Please enter an appeal from the decree in this case dated the twenty-eighth day of March, 1922, to the Court of Appeals of Maryland," we understand it was intended to be from each of the three decrees of that date, which are in the record, and involve the same question. The three cases were argued together below and in this Court, and were practically treated as one. There were three cases in the lower court between the same parties known as Case A, Case B and Case C. This is the fourth appeal (counting the three in this record as one) which has been before us in connection with the transaction which was the origin of this controversy. One is reported as *Manhattan Land Corporation* v. *The New Baltimore Loan and Savings Association,* 128 Md. 529; another is the case of *Raith* v. *Richardson, Trustee,* amongst the unreported cases in 139 Md. 696; and the other one is *Raith* v. *New Baltimore Building and Loan Association,* 140 Md. 542. Motions to dismiss the appeals were filed by the Traceys and

the Manhattan Corporation on the ground that the appellant had no such interest as entitled it to appeal, which we will refer to later.

Clarence C. Tracey arranged with the Manhattan Land Corporation to purchase from it three lots of ground at Mt. Washington for $3,500, upon each of which he was to erect a house to cost $6,500. As Tracey did not have the money, he was to borrow $19,500—securing one-third by a mortgage of his wife and himself on each property, and the Manhattan Corporation agreed to take a second mortgage for the $3,500 on the three properties. He did borrow the money from the New Baltimore Loan and Savings Association, and on the 22nd of November, 1919, he and his wife gave a mortgage on each of the three properties for $6,500, and on the same date gave a second mortgage to the Manhattan Corporation for the $3,500—that corporation having the same day conveyed the lots to Tracey and his wife. On the 13th of July, 1920, the mortgagors having defaulted in the covenants and conditions in the three mortgages to the loan and savings association, separate foreclosure proceedings were instituted for the sale of the mortgaged premises. Sales were made by John H. Richardson, who was appointed trustee, and reports of them were filed. Exceptions were filed by the Manhattan Corporation, but they were overruled and the sales were ratified. An appeal was taken by the Manhattan Corporation from those orders, but were affirmed by this court in the case reported in 138 Md. 529. JUDGE PATTISON, in speaking for the Court, said that Mr. Tracey procured the loan of $19,500 from the building and loan association through its attorney, John H. Richardson, with the understanding "that the sum so borrowed should be expended solely in the erection of said houses; and, to be assured that it would be so expended, it was agreed between Tracey and Richardson that the money should be deposited with the association to be used as needed in the payment of the costs of the building of said houses, and that its withdrawal from the association should be subject to the control and supervision of Richardson. The above pro-

vision was essential to the security of both the appellant and appellee." . After referring to the fact that the Manhattan Corporation was to convey the property without receiving any purchase money in cash, the payment of the whole of which was to be secured by a mortgage subject to the other mortgages, he went on to say: "Consequently it is absolutely essential to the security of both that the money that was to be loaned by the appellee to Tracey should be expended in the erection of said houses, thereby increasing the value of the mortgaged premises." In the conclusion of that opinion it is said:

"It was claimed by the appellant that the entire amount of the loan secured by the mortgage from Tracey to the appellee never passed from the appellee. If such fact be true, it does not, upon the facts of this case, affect the right of the mortgagee to foreclose the mortgage, there being, as we have said, a default in the covenants and conditions therein contained; but it may be that such fact should be considered in the distribution of the proceeds of sale."

The sales of the properties did not realize enough to pay the first mortgages in full, if the loan and savings association was entitled to the amounts named in the mortgages, less any payments made on them. The lower court found that the appellant had only paid $11,700 in all to Tracey, set aside the audits which had been made allowing the appellant payment in full, and directed the auditor to only allow $3,900, with interest and proper costs in each of the three cases, and to distribute the balance over and above the said allowances to the Manhattan Corporation. It is from these decrees that the appeals were taken.

The motions to dismiss the appeals are based on the alleged reasons: "First, because the appellant has no such interest in the subject matter as would allow it to appeal; second, because no injury has resulted to the appellant from the decrees from which an appeal is attempted to be taken." But, as will

be seen later, the appellant has an interest, certainly to the extent of $1,700, and may sustain injury beyond that sum, if the decrees stand. The motions will therefore be overruled.

We will not stop to determine whether section 2 of article 66 is applicable to the appellant, as that question was not raised, and as its charter is not in the record, we are not informed as to just what sort of an association it is. It would seem that that section does not affect the transaction between it and Tracey. The case of *High Grade Brick Co.* v. *Amos,* 95 Md. 571, might have been cited against the appellant, if it is not a building association and protected by such cases as *Robertson* v. *American Homestead Association,* 10 Md. 397, 408; *Appeal Tax Court* v. *Rice,* 50 Md. 302, 318, if the amounts of the mortgages were not paid Tracey. But the evidence in this case shows that, when the mortgages were given, Tracey was credited by the appellant with the full amount of them, which he deposited with the mortgagee, and it was agreed between Tracey and John H. Richardson, representing the association, as was found by this Court in 138 Md. *supra,* that as the work on the houses progressed, certain amounts were to be paid on the approval of Mr. Richardson. They were admittedly so paid to Mr. Richter, the builder, up to the sum of $3,900 on each house. In the meantime Richter was at work completing the houses in accordance with the contract between him and Tracey. That contract provided that twenty per cent. was to be paid when the first floor joists were laid, $1,300 on each house; twenty per cent. when the second floor joists were laid, same amount; twenty per cent. when the roof was on and floors laid, same amount; and forty per cent. when the job was completed and accepted—being $2,600 on each house; that the final payment was to be made within ten days after the completion of the work. It was also agreed that the work was to be done under the direction of Dewitz and Webb, architects and engineers, and the owner, and their decision as to the true construction and meaning of the drawings and specifications should be final. On May 18th, 1920,

Messrs. Dewitz and Webb addressed a communication to Mr. Richardson, stating that Christian F. Richter had completed the three cottages (the term used in the contract), in accordance with the terms of his contract, and on May 21st, 1920, they addressed another communication to Mr. C. C. Tracey that "Mr. Christian F. Richter has completed the three cottages for you at Mt. Washington, in accordance with the terms and conditions of the plans, specifications and contract covering the same." That is marked "O. K. C. C. Tracey." Mr. Richter took the certificate to Mr. Richardson and he told him he would not give him the money without Tracey being there. Richardson testified that he sent for Mr. Rusk, who represented the Manhattan Land Corporation, and told him that the builder wanted his money and, although he did not think that he should pay out the money under existing conditions, as Tracey had not completed his contract with the building association and the mortgages were in default, etc. "Then after that, Rusk said to me, he said he thought the builder should have the money." Objection was made to that statement on the ground that the authority of Mr. Rusk had not been shown, and Richardson then testified that Rusk "was the secretary of the company and the only man I dealt with when dealing with the Manhattan Land Cormpany; the only man I knew. I knew no other man in the company." He said that Mr. Rusk brought him the second mortgage (which was the one to the Manhattan Corporation), told him that that was the mortgage which was subject to the first mortgages, and he recorded it, sent Mr. Rusk the bill, and he paid for the recording of it. The court admitted it subject to exception. Mr. Richardson also testified that in the presence of Richter and Tracey he went over the whole thing and said: "I told Tracey he had not completed on his arrangements with me, and I told him under the circumstances the property would not sell for as much money, that the mortgage was now in default, and we had to foreclose it, and I felt the building association, that I, as trustee for the two of them,

should hold the money under my control, and they were satisfied with the arrangement then made. I told them if they were satisfied I would give them the checks and under that arrangement I gave Tracey the checks, and he endorsed them to Richter, and Richter endorsed them back to the association under the new arrangement—that is the whole thing. Q. When you said that they were satisfied with that arrangement did they express their satisfaction? A. They certainly did; they entered into it, both Tracey and Richter were there. Under the circumstances I got the checks and he signed the bonds and then we took—I drew the money out of Tracey's account, that free share account, and deposited it to the credit of Richter, where it has been lying drawing interest ever since, with the exception of this, out of that very account we have paid him; we have paid Mr. Richter, I think, $1,700, we gave him a check for. Q. When was that paid? A. He bought one of the pieces of property and we gave him $1,700 towards paying for it. Q. So you permitted Mr. Richter to draw from that account in his name $1,700? A. Yes, sir."

Three checks were offered in evidence. They are dated July 6th, 1920, drawn on the American Bank, Baltimore, Md., by the appellant, each payable to the order of Clarence C. Tracey, for $2,600. Each one has inserted in it what we understand to refer to the house and lot for which it was given. There is endorsed on each of the checks, "C. C. Tracey," "pay to the order of New Baltimore Loan and Savings Association, Christian F. Richter." There were some other checks offered of prior payments. Richardson said they took what he called a "bond" in each of the cases. They are bonds without sureties on them. One of them is in the record and the other two are said to be the same. It refers to the mortgage of Mr. and Mrs. Tracey to the appellant for $6,500, that the mortgage had been declared to be in default, that Richter has required the appellant to pay the balance due for the erection of the buildings, and that the appellant has consented to make said payment provided Richter

executes the bond and deposits with the appellant $2,600 as security for the performance of his obligation. The condition is that Richter shall hold the association harmless from any loss or damage it may suffer or sustain by reason of its making the payment. It then states that Richter "hereby deposits" with the association the sum of $2,600 to be held as collateral security under that indenture, with power and authority in the association to appropriate said sum or any portion of it towards the payment of any loss or damage sustained or suffered by said association by reason of the making of said payment as requested by Richter.

Those checks were not presented to the bank, but were turned over to Richardson, and he said he got them from Richter and carried them back and re-deposited them to his credit. He said that originally Tracey was credited by the association with $19,500, from which $11,700 had been withdrawn. After the endorsements on the checks and the execution of the bonds, Richter was credited on the books of the appellant with the $2,600 in each of the three cases. Richardson testified, "According to his (Tracey's) arrangement with me, that I was to have control of it and deposit it where I pleased. I had it entered in the building association"—referring to the $19,500, and he also said that no checks could be drawn out without his sanction, under the arrangement with Tracey. Mr. Rusk and Mr. Tracey differ with him as to some of the details, but there is no such difference as seriously affects the transaction. The fact is, and cannot be denied, that the Manhattan Corporation understood perfectly that it was taking a mortgage of $3,500 on the three lots subject to a mortgage of $6,500 to the loan and savings association on each of them. It was understood by all the parties that the money loaned by the appellant was to be expended on the lots purchased of the land corporation, as shown in 138 Md. 529, and while Richter was not a party to any agreement with the Manhattan Corporation, so far as appears, there can be no doubt that that corporation had knowledge that he was building the houses with the expectation of being paid out of

the proceeds from the mortgages to the appellant. It would be very inequitable to use money, which ought to go to Richter, to pay the land corporation, and a court of equity should not permit it to be done unless it is helpless to protect him from such injustice.

For some reasons, it might have been better to have deposited the $19,500 originally in some bank and not leave it with the appellant, but under the circumstances of this case, where all of the parties were informed as to the material matters, and the appellant, the Manhattan Corporation and the Traceys were acting together, and Mr. Richardson was to control the fund in so far as necessary to protect the parties, as we have already decided in 138 Md., we can see no reason why that cannot be done. This case is not like that of *High Grade Brick Company* v. *Amos, supra,* but is more like *Edelhoff* v. *Horner-Miller Mfg. Co.,* 86 Md. 595, and *Western Natl. Bank* v. *Jenkins,* 131 Md. 239. In the former, the mortgagor, spoken of in that case as the corporation, gave Shethar and Sanford a mortgage for $25,000, but only part of that was paid over to the corporation. JUDGE PAGE said: "The consideration set forth in the mortgage is the sum of $25,000, due from the mortgagor to the mortgagees. After the execution of the instrument that sum was in the hands of Shethar and Sanford, and the corporation could draw on it at its own pleasure. There is no evidence that the mortgage was executed for the purpose of securing other sums to be thereafter advanced. The sum to be secured having been particularly mentioned, the mortgage cannot be within the inhibitions of section 2 of article 66 of the Code." In *Western Natl. Bank* v. *Jenkins, supra,* the case of the *Baltimore High Grade Brick Co.* v. *Amos* was said to be "wholly and entirely different from the facts appearing in this record," as it undoubtedly was. It would be difficult sometimes to arrange for buildings to be erected, if something of the kind done in that case and in this could not be done.

In the *High Grade Brick Co.* v. *Amos* case, on page 600, it was said by JUDGE SCHMUCKER, "Of course if the appellant

had actual knowledge of the true transaction between the appellees and of their real relation to each other when it sold the bricks to Amos, it acted with its eyes open in making the sale and cannot now be heard to complain that the transaction was fraudulent as against it." In this case there can be no doubt that all of the parties had knowledge of what was being done, and while it is true that the appellant could not appeal simply for Richter's benefit, it had actually paid out $1,700 to him and had credited him with the $7,800 (including the $1,700), in such way that it is the money of Richter, subject to the agreement he made with appellant, to whom Tracey had assigned it by means of the transfer of the checks to him. There is nothing to suggest that the appellant did not have the money in the bank on which it had given the three checks for $2,600 each, and, as they were re-endorsed to the appellant, it would have been an idle and unnecessary form for it to take the checks to the bank and then deposit them to its own credit. But under the Negotiable Instruments Act that is not necessary, even if it could not in equity have been regarded as an assignment, outside of that act. The checks were negotiable under section 22 of article 13, as section 22 expressly provides that an unqualified order or promise to pay is unconditional within the meaning of that act, although coupled with "1. An indication of * * * a particular account to be debited with the amount; or, 2. A statement of the transaction which gives rise to the instrument." *First Denton Nat. Bank* v. *Kenney,* 116 Md. 24, 29.

By section 138 of article 13, "A negotiable instrument is discharged * * * when the principal debtor becomes the holder of the instrument at or after maturity in his own right." Richter had required the appellant to pay the balance of the money which was due for the erection of the buildings, and the appellant had consented to make said payment, provided Richter executed the bond and deposited the $2,600 as security as shown above, and he did deposit the checks for that amount in each of the three cases. So, while it may be

that Richter will be entitled to all of the $7,800 less the $1,700 already paid to him, which is not now before us, the appellant owed Tracey that amount according to the evidence, as a part of the mortgage, or at least some part of it, and hence the decree directly and seriously affected it. The evidence certainly tends to show, if it does not conclusively show, that Richter had completed the three houses and there was still due him that amount.

If there is any question between the appellant and Richter as to any part of the $7,800 being due the appellant (outside of the $1,700), that is a matter between them, which we are not called upon to determine in this case, as Richter is not a party to it; but the Manhattan Corporation is not entitled to it, so far as the record shows. It follows that the decrees must be reversed.

> *Motion to dismiss appeals overruled, and decree in each case reversed, with costs to the appellant and cause remanded for further proceedings in accordance with this opinion.*