GOERTZ, Receiver, *v.* BACKMAN, Trustee, et al.
[No. 177, October Term, 1949.]

452

*Decided June 7, 1950.*

454

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON and HENDERSON, JJ.

*Joseph Loeffler,* with whom was *Bernard J. Mediary* on the brief, for the appellant.

*Charles G. Page,* with whom were *White & Page* and *John T. Backman* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

The equity case in which this proceeding arose was instituted in October, 1948, by Luther J. Smith and wife and Hale M. Hamilton and wife against General Erectors, Inc., a building corporation, and John T. Backman, trustee. The bill of complaint alleged that the corporation had sold to each of the complaining couples an uncompleted house in Ingleside Manor, but that it owed large amounts for taxes, labor and materials, and had stopped all construction work. The bill further alleged that the corporation had borrowed sums from Irvington Federal Savings and Loan Association of Baltimore City, and had deposited them with Backman as trustee. The bill prayed for a receiver and an injunction to restrain Backman from paying any of the funds which he held as trustee. In November, 1948, the Court appointed Harry E. Goertz receiver. In March, 1949, the Court dissolved the corporation. When the case against

Backman came on for hearing, the receiver appeared, but no testimony was offered by complainants. Accordingly the Court on October 19, 1949, dismissed the bill as to the trustee.

On November 12, 1949, the receiver petitioned for the funds in the hands of the trustee. He alleged: (1) that the corporation borrowed $13,440 on October 9, 1947, by mortgage on two lots, and that this amount was deposited with the trustee for disbursement to the corporation in accordance with a schedule of construction progress; and on October 23, 1947, the corporation borrowed $44,100, which was likewise deposited with the trustee; (2) that at the time the mortgages and trust agreements were made, the corporation was indebted to creditors in the amount of approximately $25,000, and was insolvent, and (3) that the trust agreements were fraudulent as to creditors. On December 14, 1949, the Court dismissed the receiver's petition and authorized Backman to pay the funds of the mortgagee. From that decree the receiver brought this appeal. No question has been raised as to his authority to appeal.

It was questioned at the outset whether the matter raised by the receiver's petition was *res judicata.* It is an established doctrine that when an issue has been fairly tried in a court having jurisdiction of the parties and the subject-matter, and has been finally decided on the merits, it cannot again be litigated by the same parties in the same court or any other court of concurrent jurisdiction. It is thoroughly understood that there must be an identity of parties, an identity of subject-matter, and a decision on the merits, as well as jurisdiction over both parties and subject, otherwise the defense of *res judicata* will not be available. *Ugast v. La Fontaine,* 189 Md. 227, 232, 55 A. 2d 705; *Riggs v. Loweree,* 189 Md. 437, 442, 56 A. 2d 152; *Snodgrass v. Stubbs,* 192 Md. 287, 64 A. 2d 130. Thus, while a decree dismissing a bill of complaint, where the Court determines that the complainant has no title to the relief sought, is a bar to another suit brought for the same

matter, a dismissal is not a bar if it is not upon the merits and the court has not determined that the complainant had no title to the relief sought by the bill. *Royston v. Horner,* 75 Md. 557, 24 A. 25.

When the case against Backman came on for hearing, the receiver had been appointed and the corporation had been dissolved. The action of the Court had produced an entirely different situation. Complainants, discontinuing their effort to restrain payment of the trust funds, offered no evidence. Evidently they felt that if the receiver wished to take action in reference to the trust funds, he had the right to do so. In any event, the Court was justified in considering that the matter was not *res judicata.*

One of the contentions of the receiver is that the decree of dissolution nullified the trust agreements. As a general rule, the insolvency of a corporation and the assumption of jurisdiction by a court of equity for the distribution of its assets among creditors do not destroy any security or liens existing in favor of any of its creditors. In the absence of any statute to the contrary, secured creditors of an insolvent corporation are entitled to be satisfied from the secured property before it is liquidated or distributed as assets of the corporation, and the unsecured creditors are merely entitled to the residue after the secured creditors are satisfied. The Maryland Corporation Law provides that whenever any corporation shall be dissolved by the decree of any court of this State, all preferences, payments and transfers, howsoever made by it or by any of its officers on its behalf, which would be void or fraudulent under the insolvency laws of the State, if made by a natural person, shall likewise be fraudulent or void. Code 1939, art. 23, sec. 99. But no existing liens of a corporation, other than those that would be void or fraudulent under the insolvency laws, are divested by dissolution of the corporation and the appointment of a receiver. *Forest Lake Cemetery v. Baker,* 113 Md. 529, 538, 77 A. 853.

It has been held in Maryland that in the absence of statute mortgages to secure future advances are valid. Their use grew out of the necessities of trade and commerce and they were found advantageous by merchants and bankers to provide for continuous dealings and for security for obligations to accrue at some future time. But in *Western National Bank v. Jenkins*, 131 Md. 239, 250, 101 A. 667, 1 A. L. R. 1577, the Court explained that where there is a mortgage loan to a building corporation for the purpose of assisting it in building houses on land being developed by the corporation, and it is agreed that the money is to be deposited with a trustee, who is to disburse it as the work progresses to different stages according to plans and specifications, such a mortgage is not a mortgage for future advances. Generally there is no question of the validity of this type of transaction whereby the proceeds of a mortgage loan are placed by the mortgagor in trust for disbursement as the work of construction progresses. *Neeb v. Atlantic Mill & Lumber Realty Co.*, 176 Md. 297, 5 A. 2d 283.

Each trust agreement now under attack provides that if the mortgagee should foreclose the mortgage and sell the mortgaged property, any deficiency on the mortgage may be made up and paid to the mortgagee out of the unexpended balance of the fund in the hands of the trustee. It is undisputed that the unexpended balances in the hands of the trustee are far less than the deficiencies on the mortgages. In the first fund the trustee has $3,263.20, whereas the deficiency is $7,281.31. In the second fund the trustee has $6,611.10, whereas the deficiency is $18,550.37. Thus it is plain that, under the terms of the agreements, the mortgagee is entitled to the unexpended balances.

But the receiver insists that, even though the decree of dissolution itself did not nullify the trust agreements, the Court should declare them void as fraudulent conveyances. Apparently the receiver relies on the section of the Uniform Fraudulent Conveyance Act which provides as follows: "Every conveyance made and every

obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Laws of 1920, ch. 395, Code 1939, art. 39B, sec 4.

Our first inquiry here is whether the corporation was insolvent in October, 1947, when the mortgages and trust agreements were made. Edward Flutie, who was the president of the corporation, testified that he never had the slightest apprehension of insolvency until March, 1948. He said that throughout 1947 he had "great confidence" in the whole enterprise, and there was nothing to lead him to believe that there was any likelihood of insolvency. In addition to its offices, yard and equipment on Washington Boulevard, the corporation had substantial equities in seven properties. It had built two houses in Ingleside Manor and was now building two more in that development and also one in Laurel, one in Elkridge, and one at Broadwater Beach. Flutie testified that in October, 1947, the corporation had a pay roll of between $200 and $400 per week, and that he was "meeting that pay roll currently." He further swore that he did not have any difficulty in paying bills at that time. He was unable to recall on the stand the amount of the assets and liabilities in October, 1947; but the receiver did not offer the books of the corporation and gave no reason for failing to offer them. Therefore, we think the evidence fails to show that the corporation was insolvent at the time the mortgages and agreements were made.

Nor is there any evidence that the agreements were made "without a fair consideration." It was conceded by the receiver that both of the mortgages were valid. There is absolutely nothing in the record to refute Flutie's testimony that they were given by the corporation "in entirely good faith and for complete value." When the corporation made application for the first loan on two houses to be constructed, it was requested to submit the plans for the houses. The plans were

submitted and were referred to an appraiser. The two proposed houses were appraised at $21,750. The mortgagee gave a check payable to the order of the corporation and Backman. The check was endorsed and turned over to Backman to hold as trustee in accordance with the trust agreement. Backman thereupon deposited the check in his name as trustee. The same course was followed when the corporation applied for the second loan on seven houses. These were appraised at $75,500. It was clearly understood that the building association would loan the money on each mortgage solely for the purpose of building the houses on the lots included in the mortgage, and as a protection to the building association the money was to be deposited with the trustee and disbursed by him as the work of construction progressed. We think this arrangement was fair and reasonable.

Finding no evidence to show that the trust agreements were fraudulent as to creditors, we will affirm the decree authorizing the trustee to pay the unexpended balances of the trust funds to Irvington Federal Savings and Loan Association.

*Decree affirmed, with costs.*