## TONEY SCHLOSS PROPERTIES CORPORATION *v.* UNION FEDERAL SAVINGS AND LOAN ASSOCIATION

[No. 102, September Term, 1963.]

*Decided January 6, 1964.*

226

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*David M. Blum,* with whom were *Arnold Fleischmann* and *Nyburg, Goldman & Walter* on the brief, for the appellant.

*Charles C. W. Atwater* and *Walter C. Mylander, Jr.,* with whom were *Thomas A. Garland, Harvey M. Lebowitz* and *Hoffberger & Hollander* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

From the chancellor's finding that appellant's mortgage was subordinate to a construction mortgage of the appellee (both secured by the same property) this appeal was taken.

The question involved is whether the appellant's mortgage, which it subordinated to a construction mortgage given to the appellee, is inferior to such construction mortgage, where, at the time of settlement, the appellee paid the full amount of the loan to the mortgagor, which, in accordance with its agreement to do so, deposited the same in the name of two trustees to secure its application periodically to the making of improvements upon the realty, or, as an alternative, the repayment of the loan, and the trustees make payments to the mortgagor which they were not required to make, because contrary to the schedule for such payment in the trust agreement.

Marcie Homes, Inc. (Marcie Homes), by virtue of a deed dated December 30, 1959, from Sherwood Acres, Inc., duly recorded, was the owner of lots 5 and 7, Block F, as shown on the Plat of Section 4, Stevenson Ridge, and lot 3, Block D, as shown on the Plat of Section 6 of said subdivision. Title to these lots was encumbered by a prior mortgage from Sherwood Acres, Inc., to Dan Schloss, et al., dated May 1, 1957, duly re-

corded, covering a large tract. Appellant is the assignee of this mortgage.

On July 5, 1961, Marcie Homes executed the mortgage here in question to appellee in the amount of $83,500. The full amount of the recited principal was paid to the mortgagor, which deposited the same with two trustees under the terms of a collateral trust agreement. One of the trustees was an officer of appellee and the other was associated with the firm of attorneys which represented it. Their duty under the agreement was to release the fund to the mortgagor in fixed stages as construction of improvements upon the three lots progressed.

It was a prerequisite of the loan that the appellee's mortgage be a first lien, and in prior cases, appellant had executed releases. However, on this occasion, appellant delivered to The Title Guarantee Company (which settled appellee's loan) a waiver of the priority of its mortgage in favor of the one about to be executed to appellee. This waiver was misplaced and not recorded. At a later date, appellant executed a "Confirmatory Waiver of Priority of Mortgage," which is expressly stated to be made as of July 5, 1961, and recites appellee's then recorded mortgage, for $83,500, as to which it waived its priority.

On February 2, 1962, the mortgage being in default, foreclosure proceedings were instituted by appellee. A sale was afterward held, reported to the court, and ratified over appellant's exceptions, which were dismissed as such, but a hearing was later had in which they were "taken as a Petition for Declaratory Relief," addressed to the proceeds of sale by order of the court.

Appellant argues, "it is settled in Maryland that when a lender under a mortgage * * * to secure future advances, with actual knowledge of an [intervening] mortgage * * * of a third person, voluntarily makes an advance he could not have been compelled to make, that as to such voluntary advance the claim of the lender is inferior to the third party's mortgage * * *," citing *Ewing v. Krafft,* 222 Md. 21, 158 A. 2d 654, and *Blaustein v. Aiello,* 231 Md. 375, 190 A. 2d 639, and comparing *Rupp v. Johnston Company,* 226 Md. 181, 172 A. 2d 875. It then asserts that the factual situation in the case at bar brings the case squarely within the foregoing rule. We agree with the

above statement of the law, and reaffirm our holdings in the cases named; however, we are unable to concur in the claim that the factual situation in the instant case brings it within the ambit of the rule stated.

In *Ewing,* this Court was called upon, for the first time, to answer certain aspects of the rule as stated above. There, a construction loan was granted on two vacant lots. *No money passed at the settlement* and the instrument securing the loan referred only to the total consideration, making no reference to installment advances. However, the parties had an oral agreement as to disbursements, which was embodied in a separate schedule. The lender made a number of advances in accordance with the schedule, but the borrower was not entitled to the last advance of $8,300, which was made by the lender with actual knowledge of intervening liens. It will be noted that the lender did not pay to the borrower or his agent, at the time of settlement, the amount of money to be loaned, or any part thereof. In fact, it was uncontroverted that the transaction therein involved was one that involved "future advances." In the instant case, the whole amount of money loaned was paid to the borrower, which turned it over to two trustees to make disbursements in accordance with the trust agreement. The lender made no further nor *future* advances. We held in *Ewing* that because the deed of trust there given was to secure *future advances* and the lender's claim was based upon a *voluntary* payment of an advance made at a time when the lender had *actual* notice of intervening liens, the lender's claim was subordinate to the intervening liens.

In deciding *Ewing,* Judge Hammond, for the Court, referred to R. Dorsey Watkins' (now Judge Watkins) splendid article "Maryland Mortgages for Future Advances" in 4 Md. L. Rev. 111, and the case of *Housing Mortgage Corp. v. Allied Const. Inc., 97* A. 2d 802 (Pa.). Judge Watkins' article was written shortly after this Court had decided *Neeb v. Atlantic Mill and Lumber Realty Co., Inc.,* 176 Md. 297, 5 A. 2d 283 (1939). It will be referred to later. Judge Watkins states that mortgages for future advances are "mortgages intended to be security from their date of execution (or recordation) for loans and

advances *thereafter* (emphasis ours) to be made * * *. Their effect was to permit the right of the mortgagee to be determined as regards other lienors or encumbrancers, not by the date or dates upon which such advance or advances were made, but by the date (or recordation) of the mortgage itself, subject in some cases to the question of notice to the mortgagee [not involved in the case at bar] * * *, and to the further question of whether his advances were optional or obligatory." See also 1 *Jones, Mortgages* (8th ed.), § 447, *et seq.*, especially § 457. It will be pointed out below that the Maryland decisions hold that mortgages made under the attendant circumstances of the instant case are not to secure "future advances," and Judge Watkins specifically notes that fact in his article.

We revert, momentarily, to *Rupp, Aiello,* and *Housing Mortgage Corp.*, all mentioned above. There is nothing in this opinion that conflicts with the holdings in those cases. In *Housing Mortgage Corp.*, there was no question but that the mortgages involved therein were to secure "future advances." The mortgagee retained the money to be loaned and advanced it according to the terms of an agreement between the parties. These factors are not present in the case at bar. Also in *Rupp*, it was uncontroverted that the recorded instrument there involved was to secure "future advances." The real question there involved, was whether the advances became liens from the date of recordation of the deed of trust, or whether they became liens upon the dates of the advances. And in *Aiello*, we assumed that the deed of trust was to secure "future advances."

We now consider the Maryland cases that we think are controlling. Although there are quite a number of them making the same holdings, *Western National Bank v. Jenkins,* 131 Md. 239, 101 A. 667, seems to be a leading case upon the subject under consideration and the facts therein are almost identical with those involved herein. There, a mortgage was given to one Jenkins to secure a loan made to a realty company to aid it in the building of a number of houses. Checks for the money loaned were drawn by Jenkins to the order of the realty company, which by prearrangement, were endorsed by the mortgagor and deposited in a trustee's account. It had been agreed that the trustee should make periodic payments on account as

the work on the houses progressed. It was also agreed that in the event of a default under the agreements, the trustee should have the right to "return the remainder of said fund to the mortgagee," or at the option of the mortgagee, apply the same to the completion of the houses. There was no provision for any future loans, and no evidence that any such were ever made or contemplated. The Western National Bank obtained two subsequent mortgages on the same property, and a contest arose as to which of the mortgages had precedence.

The Bank attacked the Jenkins mortgage on the ground that it was to secure "future advances or loans," and since the amounts of the same and the times when they were to be made were not stated in the mortgages, they were void under "Section 2, Article 66 of the Code.[1]" The Court said the questions posed were: *"first,* what is a mortgage for future loans or advances; and *secondly,* is the Jenkins mortgage such a mortgage" and that upon the facts and circumstances, "considered in connection with the law, common and statutory, upon the subject of mortgages for future loans and advances, appear to present no real difficulty?" The Court pointed out that Jenkins passed over to the mortgagor at the time of the execution of the mortgage the entire consideration stated therein, which upon being turned over to a trustee, the trustee held "in trust for the parties. * * *. That it was really the money of the Realty Company which it had borrowed from Mr. Jenkins, and which the trustee was holding for its benefit under the provisions of the trust agreement * * *." The Court held "that the Jenkins mortgage [was] not a mortgage to secure future loans or advances within the meaning of Section 2 of Article 66 of the Code, and that it constituted a first lien upon the mortgaged property."

In *New Balto. Loan & Sav. Assn. v. Tracey,* 142 Md. 211, 120 A. 441, there was a building mortgage to secure a named sum, which sum was credited to the borrower on the books of the lender, a loan association, and was to be paid out as the

---

1. Code (1957), Article 66, § 2 does not apply to Baltimore County. See § 3 thereof. This case and those to follow are pertinent, however, in determining what is a mortgage for "future advances."

building progressed. Chief Judge Boyd observed that "it would be difficult sometimes to arrange for buildings to be erected, if something of the kind done in that case [*Jenkins, supra*] and in this could not be done." The Court then held that the building mortgage was not invalid as one to secure future advances.

Again, in *Neeb v. Atl. Mill & Lumber Co., supra,* there was a similar ruling. One Keefer decided to enter the construction business, and approached two brothers, Charles and William Neeb, with a plan. William owned three vacant lots upon which Keefer proposed to erect houses, but did not have the purchase price of $700 asked by William. In furtherance of the plan, William created ground rents having a capitalized value of $1,300, conveyed the leaseholds to Keefer and gave him $600, the cash difference between the ground rent values and the price asked for the land. At the same time, the other brother, Charles, loaned Keefer $2,000, which was secured by a mortgage on the leaseholds. Charles gave Keefer his check for $2,000, and Keefer, immediately, endorsed it over to John S. Mahle, Esquire (Charles' attorney), as trustee for distribution in accordance with an agreement providing for payments as the construction of the houses progressed. Keefer purchased materials from the lumber company and gave it a mortgage for the amount due.

Default occurred under the Neeb mortgage and foreclosure proceedings resulted. The lumber company filed a bill in equity to enjoin the foreclosure, to have the Neeb mortgage set aside as being invalid because for future advances, to have the lease creating the ground rents annulled, and to have the lumber company's mortgage declared a first lien. The lower court granted the relief prayed, but this Court reversed on all points, stating in the opinion that one of the questions presented for consideration was "whether the mortgage, supplemented by the agreement as to the distribution of its proceeds, was for a future advance, and void under section 2 of Article 66 * * *." The appellees there contended (as the appellant contends here) that "the arrangement whereby the proceeds of the mortgage loan of $2,000 were paid by check to Keefer and wife and by them endorsed to John S. Mahle, as trustee, who, by agreement with Keefer, undertook to pay the same to Keefer in installments to be measured in amount by the work on the house, as

it was from time to time completed, constitute[d] an arrangement for future advances * * * and [was], therefore, void." The contention was answered as follows: "This Court has decided that such a mortgage and agreement does not under Article 66, Section 2, constitute an agreement for future advances." See also *Edelhoff v. Horner-Miller Mfg. Co.*, 86 Md. 595, 39 A. 314; *White Eagle, etc., Bldg. & Loan Assn. v. Canton Lumber Co.*, 168 Md. 199, 178 A. 214; *Goertz v. Backman*, 195 Md. 450, 74 A. 2d 3 (wherein the Court reaffirms *Jenkins* and *Neeb*, both *supra*, at p. 457) Cf. *Leister v. Bank of Westminister*, 199 Md. 241, 86 A. 2d 393.

Judge Watkins, in analysing the Maryland decisions and statutes, at pp. 126, 127 and 128 of 4 Md. L. Rev., reached the following conclusions: "* * * it is obvious that at least the following arrangements are possible:

* * *

"3. The proceeds of a mortgage may be placed with a third person, under a trust, escrow or agency agreement, to be distributed in accordance with the terms of a definite agreement or understanding. Where this is really done, the Court [Court of Appeals of Maryland] has had no hesitancy in holding the mortgage not to be within the future advances provisions."

* * *

"Where the proceeds are at or before the execution of the mortgage paid by the mortgagee directly or through the mortgagor to a third person to be by him applied, *the mortgage is good as security from the date of recording for the entire amount,* although [emphasis ours]

"(1) There is an express understanding or agreement that the mortgagor is immediately to deliver the proceeds to a third person, and not directly to retain any of the amount lent.

"(2) The agreement that the proceeds are to be placed with a third person is contemporaneous with the loan, and is a condition precedent.

"(3) The third person is in the event of default in the mortgage, authorized or required to apply any unexpended balance to the payment of the mortgage debt."

It would serve no useful purpose to repeat the facts in the case at bar. It is obvious that they bring the security of the appellee within the scope of the *Jenkins, Neeb, Tracey* and *Backman* cases, and the analysis made by Judge Watkins and set out above. We, therefore, hold that the money loaned by the appellee to the mortgagor was money presently loaned and it did not constitute future advances; consequently its deed of trust was a lien for the full amount of the consideration named therein from the time of its recordation, unless there be some rule of law or equity that subordinates it to the security held by the appellant.

However, a thorough and careful examination of the record before us reveals nothing to bring any such rule into play. No fraud or collusion is alleged or proven by the appellant. And, although the appellee is not required to rely upon a lack of actual knowledge by it of appellant's mortgage, the attempted proof, by the appellant, of such actual knowledge by the appellee is markedly weak.

Appellant asserts that a "report of the status of title" had been sent to Union Federal before settlement. Nothing in the record supports this assertion. On the contrary, the record discloses that it had been customary for the appellant *to release* its mortgage, when appellee made construction loans to Marcie Homes; and it was not until July 5, 1961, the date of settlement, that Mr. Goldman, appellant's attorney, notified Mr. Davis, of the Title Company, that appellant would subordinate, but not release. (Appellant relies upon this notice to Davis as establishing actual notice on the part of the appellee. We find it unnecessary to determine whether appellee had actual notice, or to pass upon the scope of authority of Davis as appellee's agent.) Goldman admitted that he had no discussion with Union Federal or any of its officers with reference to how the construction mortgage would be handled, and he "merely assumed" it would be handled in "standard fashion." When asked if he

told Mr. Davis why the appellant refused to release on this occasion, he stated that it would have been "quite natural" for him to have done so, and he "assumed" he did, but he did not recall the words he used. Goldman also admitted that Marcie Homes had been in arrears on appellant's mortgage since about April of 1960, but he did not testify that he ever informed the Title Company or the appellee of that fact.

Mr. Albert A. DeFord was the Executive Vice-President of the appellee. He was a director thereof, its principal officer in charge of construction loans, and the directing trustee under the trust agreement mentioned herein. He did not attend the settlement, and knew that on previous occasions appellant had released, not subordinated its mortgage. When asked if he had any personal knowledge of appellant's mortgage on the three lots here involved, he answered "none whatsoever," (no attempt was made to contradict this assertion). He frankly stated that he had approved and made payments from the trust fund before the houses had reached the stage of construction contemplated in the trust agreement. When asked why he had not insisted upon a strict compliance with the schedule, he replied that in a period of four years, appellee had loaned Marcie Homes well over a million dollars on about fifty houses; up until the latter part of July, 1961, the houses had been completed and the loans repaid without "any exceptions"; at that time there were twelve houses in the course of construction under three or four of appellee's mortgages; ten of these were under sales contracts, and settlement dates had been set for five; Marcie Homes had to complete these houses before settlement could be made; in all of these houses there were many extras over and above the original contract prices; in order to aid Marcie Homes and to get these houses completed (after the sales contracts had been exhibited and delivered to appellee) funds were advanced to Marcie Homes with the understanding that the net proceeds from the sale of these houses would be used to complete the work on subsequent houses; and that there was a difference of some ten to eighteen thousand dollars between the amount of appellee's mortgages and the sales prices of the houses. Mr. DeFord owed his fidelity and loyalty to the mortgagor and the appellee, the beneficiaries under the trust agree-

ment. We find nothing in his conduct that enures to the benefit of the appellant, so as to render its mortgage superior to that of the appellee.

In view of what we have said above, it becomes unnecessary to consider appellee's claim that the waiver of priority by the appellant, in and of itself, rendered appellant's mortgage inferior to that of the appellee.

*Decree affirmed, with costs.*