## JAMES F. THRIFT *vs.* THOMAS M. BANNON.

*Petition for Injunction to Restrain Sale Under a Mortgage—*
*Insufficient Averments.*

Plaintiff filed a bill alleging that certain conveyances of land in which he claimed to have an equitable title were fraudulent and asked that the same be vacated. Afterwards he filed a petition in the cause alleging that T., whom he prayed to be made a party defendant, had obtained an assignment of a mortgage of the land executed by the plaintiff prior to said deeds; that T. had advertised the property for sale under the mortgage; that interest on the same had been paid; that the assignment was in fraud of the plaintiff's rights, and he asked that the sale be enjoined. *Held,* that since the petition fails to allege that the principal of the mortgage debt was not due, or to set forth any particulars of the alleged fraud in the assignment, and since no bond was filed, the injunction restraining the sale should not have been granted.

*Decided June 30th, 1909.*

Appeal from the Circuit Court for Anne Arundel County (BRASHEARS, J.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*D. G. McIntosh, Jr.,* (with whom were *Ridgely P. Melvin* and *James F. Thrift* on the brief), for the appellant.

*Robert Moss,* for the appellee, submitted the cause on his brief.

WORTHINGTON, J., delivered the opinion of the Court.

On June 17, 1907, the original bill of complaint in this case was filed by the appellee, Thomas M. Bannon against Charles W. Green and wife, David G. McIntosh, Jr., James F. Thrift, Seth Hance Linthicum, James S. Armiger and James P. Bannon, a lunatic.

The allegations of the bill material to this appeal, are substantially as follows: That on the 21st day of February, 1891, the plaintiff had purchased a tract of land in fee, consisting of 225 acres, situated in the Fourth Election District of Anne Arundel County, adjoining the lands whereon is located the Maryland House of Correction, and that the said lands were conveyed to the complainant by a deed of that date, which was duly recorded. A copy of the deed filed as an exhibit to the bill, shows that the consideration recited therein was the sum of $2,000.

The bill further avers that on the same day, to wit, on February 21, 1891, the complainant borrowed of John W. Kaufman, the sum of $1,000 to pay the purchase money for said land, giving Kaufman at the same time a mortgage thereon to secure the payment of the sum borrowed, "which mortgage," it is alleged, "is still unreleased and unpaid." No copy of the mortgage appears in the record, however, and its terms and provisions are therefore not before us.

The bill further avers that on the 20th day of March, 1891, the complainant, Thomas M. Bannon, sold a one-half interest in this farm to James S. Armiger but, that in the year 1894 Armiger sold the one-half interest back again to Thomas M. Bannon, who instructed his brother James P. Bannon, an attorney-at-law, to draw the deed for a reconveyance of the property to the complainant, and also gave his

brother $500 with which to pay Armiger for his interest therein. But that James P. Bannon, against the instructions and wishes of the complainant, and without his knowledge had the said Armiger to convey said land to himself.

That the complainant being employed by the United States Geological Survey was frequently called long distances from his home, for long periods of time, and for that reason was induced by his brother to convey said land to Charles W. Green, now one of the defendants in this case, so that in case a sale of the property should be effected, a speedy conveyance thereof could be made to the purchaser.

A copy of the deed of conveyance to Green appears in the record as an exhibit to the bill of complaint, and shows the deed to have been dated July 16th, 1901, and to have been made and executed both by Thomas M. Bannon and James P. Bannon, the consideration named therein being, "the premises and one dollar," though the premises recite nothing that could be construed as a consideration, beyond the one dollar named therein.

The bill then further avers, that since the said conveyance to Green he (Green) had frequently acknowledged and recognized the complainant as the owner of the said tract of land, and that the complainant had instructed him not to convey said land to any one as he was holding it in the hope of selling it to the State of Maryland. That notwithstanding these instrustions, Green and wife on the 11th day of December, 1906, conveyed the property to the defendants David G. McIntosh, James F. Thrift, and Seth Hance Linthicum, in fee, for the nominal consideration of one dollar. That until within the last two months before the filing of the bill the complainant had supposed the title to the whole tract was in himself, since he purchased the half interest of Armiger, during all of which time he had paid the interest upon the mortgage debt and also all taxes on the land.

The bill then averred, that all three of the deeds above mentioned, to wit: (1) The deed from James S. Armiger to James P. Bannon dated November 14, 1894. (2) The

deed from Thomas M. Bannon and James P. Bannon to
Charles W. Green dated July 16th, 1901, and (3) The deed
from Charles W. Green and wife to David G. McIntosh, Jr.,
James F. Thrift and Seth Hance Linthicum, dated Decem-
ber 11, 1906, were without legal consideration, and were
fraudulent and void. The prayer of the bill was that these
several pretended and fraudulent deeds should be set aside
and annulled, and that James A. Armiger be decreed to make
a conveyance of his one-half interest in said tract of land to
the complainant.

Charles W. Green, and wife filed their answer to the bill
of complaint on January 27th, 1908, but Messrs. McIntosh,
Thrift and Linthicum demurred thereto.

On December 5, 1908, the complainant filed a petition in
the case, setting forth that the interest on the mortgage from
Thomas M. Bannon to John W. Kaufman, mentioned in the
bill of complaint, had been paid until Feb. 21, 1909, but the
defendant, James F. Thrift cunningly conniving to defeat
the just rights of the plaintiff, and seeking to defraud him
of his rights in the premises, and of his interest in said real
estate had recently, on October 5, 1908, procured from John
W. Kaufman an assignment of said mortgage, and had pro-
ceeded to advertise the mortgaged tract of land for sale. The
petition further alleged, that the property in question was al-
ready involved in this equity cause, and that James F.
Thrift's rights could be adjudicated herein.

It was further alleged that the sale of the property in the
mortgage proceedings would be ruinous to complainant's
rights, and destroy his right to have the Court pass upon the
fraudulent conveyances, and that the property with this
cloud upon its title would not sell for one-third its value.

The prayers of the petition were, that James F. Thrift
assignee, be made a party defendant to the cause, and that an
injunction might be issued restraining Thrift from making
sale of the real estate, as set forth in the advertisement.

On the same day an order was passed making James F.

Thrift, assignee a party to the proceedings, and although no bond was filed the writ of injunction was granted as prayed.

On January 22, 1909, James F. Thrift, assignee of the mortgage above mentioned, dated February 21, 1891, without having been summoned to appear, voluntarily appeared and filed his answer to the aforementioned petition, denying that the interest on the mortgage had been paid to February 21st, 1909, but alleging that in fact such interest had been paid only to August 21, 1908, and that both principal and interest were overdue.

The answer to the petition also denied that there was any fraud in the acquisition of the mortgage, denied that the appel·lant's rights under the mortgage could be adjudicated in this cause, or that a sale under the mortgage would be ruinous to the complainant's rights, averring that as assignee of a mortgage made antecedently to the so-called "fraudulent convey-ance," his rights could not be affected by these proceedings, and praying that the order of injunction theretofore passed might be rescinded.

Without waiting for the action of the Court on this answer, the appellant on the same day, January 22, 1909, entered an appeal from the order of December 5, 1908, making him a party defendant and granting the writ of injunction to restrain him from making sale of the real estate as advertised.

The only question presented by this appeal is whether the order of Court of December 5, 1908, making the appellant, as assignee, a party defendant and directing the writ of injunction, restraining him from making sale as advertised of the mortgaged premises, was properly passed or not.

An examination of the petition for an injunction discloses that it contains no averment, as required by Art. 66, sec. 16 of the Code, to the effect that the mortgage debt and interest had been paid, or that the assignee of the mortgage had refused to give credit for any payment thereon, nor was any fraud, stated with particularity, charged in the petition.

Neither did the petitioner comply with section 18 of Art.
66 by filing an approved bond for the protection of the as-
signee in case the injunction should subsequently be dis-
solved.   Ordinarily, without these provisions being first com-
plied with, no injunction to restrain the sale of the mortgaged
premises could properly be granted.   The averment in the
petition that the interest on the mortgage had been paid was
not sufficient, as both principal and interest if due must be
paid, or duly tendered before an injunction for such purpose
can be lawfully authorized.   As was said in the case of
*Powell* v. *Hopkins,* 38 Md. 1: "The complainant must pay,
or bring into Court to be paid, the principal and legal inter-
est, before he can claim the intervention of a Court of
Equity."

As to the question of fraud, the only allegation in the peti-
tion in this case that might be considered an allegation of
fraud is that, "James F. Thrift, cunningly, conniving to
defeat the just rights of the plaintiff, and in fraud of his
rights in the premises and seeking to deprive him of his in-
terest in the real estate mentioned, and set forth in the said
bill of complaint, has recently, to wit, on the 5th day of Oc-
tober, in the year 1908, secured from John H. Kaufman an
assignment of said mortgage, and has proceeded to advertise
said tract of land for sale."

This is not a compliance with the 16th section of Art. 66,
which provides that the fraud "shall be particularly stated
in the bill or petition for injunction."

Besides this, the filing of a bond as required by section 18,
is a condition precedent to the granting of an injunction in
such cases.

In the brief of counsel for appellee, it is contended, how-
ever, that the above mentioned provisions of the Code have
no application to this case, and that a sale under a power in
the mortgage should not be allowed to proceed where the
title to the property is in dispute, and litigation, so that the
sale might either result in a sacrifice of the property, or
cloud a title otherwise, sought to be established, citing 27

*Cyc.* 1457. But the answer to such contention, is that the mortgage in question antedates, by several years, the deeds alleged to be fraudulent conveyances, which it is sought to have set aside, and therefore any litigation in regard to the latter, affect only the equity of redemption, and cannot affect the rights of the appellant as assignee of the mortgage, unless such rights conflict with his duty as one of the joint owners of the equity of redemption, as will now be alluded to.

It is suggested in the brief of counsel for appellee, that the property in question was conveyed to McIntosh, Thrift and Linthicum in trust for the benefit of the creditors of James P. Bannon, and it is argued that the property being held in trust, the presumption is that the mortgage was purchased for the benefit of the trust estate.

But although the inference could be drawn from the allegations in the original bill, that Green held the property in trust for *Thomas M. Bannon,* yet there is no suggestion, even, of a trust in favor of James P. Bannon, and under the allegations of the bill, it is not apparent how such a trust could arise, but at any rate, no question of trust is presented by this appeal. Such question may however be inquired into and determined, by a proper petition, fairly presenting such question to the lower Court.

As we have said, the only question presented for our consideration, by the record, is whether the order of December 5, 1908, was properly granted or not, and we hold that it was not. Such order of the lower Court will therefore be reversed, the injunction dissolved, the petition dismissed, and the cause remanded for such further proceedings as may be deemed desirable.

*Order reversed with costs and petition dismissed.*