FIRST MORTGAGE BOND HOMESTEAD ASSOCIA-
TION, INC., Trustee, et al. *v.* THOMAS
B. NELSON et al.

*Mortgage to Loan Association—Injunction Against Foreclosure
—Application of Payments—Tender—Con-
clusiveness of Judgment.*

A decision sustaining a demurrer to a bill to enjoin a mortgage sale by reason of failure to set out the facts required by Code, art. 66, sec. 16, in order that such a sale be enjoined, is no bar to a second bill to enjoin a sale under the same mortgage, which bill does set out the required facts.          pp. 188, 189

While a certified check is not actual money and cannot be used in making a strict legal tender, that a tender was so attempted to be made by one seeking to enjoin a mortgage sale was immaterial, if at the hearing he asked permission to pay into court actual cash for the amount admitted to be due.
                                                   pp. 189, 190

A covenant by borrowing members of a loan association, in their application for a loan, not to bring an action against the association, the trustee in the mortgage made by them to secure the loan, until after the stockholders and directors had passed on their complaint, *held* not to apply to a suit by them to enjoin a foreclosure of the mortgage.          pp. 190, 191

Where, although a preliminary application to a loan association for a loan provided that the applicants' membership dues could be applied on a bonus note given by them to the association for procuring the loan, the sworn application for the loan, executed simultaneously with the mortgage securing it, provided merely that the bonus be deducted from the loan in advance, the mortgage referred to this second application as part thereof, counsel for the association stated that they relied on this second application, and the mortgage itself provided that the payment of dues should be for the purpose of creating a sinking fund with which to meet the loan at maturity, the association could not properly apply such dues on the bonus note instead of on the mortgage debt.                                   pp. 191-193

The fact that such borrowing members, persons of little education and no business experience, acquiesced in the entry of payments for dues in their pass book under "note account," did not estop them from asserting the right to have them applied on the mortgage.                                   p. 193

On default in a mortgage made to a loan association as trustee, to secure a loan represented by bonds sold to others by the association, the association became the agent of the bondholders to enforce the security, and thereafter it could apply dues paid by the borrowing member only upon the sinking fund created to meet the loan at maturity, although the mortgage in terms made the association the agent of the borrowers.                                   p. 194

To a bill seeking to enjoin a sale under a mortgage given to a loan association as trustee to secure bonds sold by it, accompanied by payment into court of the amount admitted to be due on such bonds, it was no defense that there was also outstanding a note, secured by the same mortgage, but as a second lien, it appearing that this note had passed into the hands of one who did not desire to enforce its collection by sale, and from whom the association could obtain a disclaimer.                                   p. 194

It having been agreed that the borrowers should pay the conveyancing costs in addition to the amount of the mortgage, it was error to credit on the mortgage extra payments made on account of such costs.                                   p. 195

*Decided June 11th, 1926.*

Appeal from the Circuit Court for Howard County, In Equity (FORSYTHE, J.).

Bill by Thomas B. Nelson and Alice L. Nelson, his wife, against the First Mortgage Bond Homestead Association, Inc., trustee, and O. Parker Baker, attorney named in mortgage. From a decree for plaintiffs, defendants appeal. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*O. Parker Baker,* with whom was *James Clark* on the brief, for the appellants.

*Joseph L. Donovan* and *W. Conwell Smith,* for the appellees.

WALSH, J., delivered the opinion of the Court.

The appellees filed their bill below seeking to restrain the appellants from selling the appellees' property at a mortgage foreclosure sale, and from a decree granting this relief the appellants have appealed.

In the spring of 1920, the appellees purchased from a Dr. Carter a house and about thirty-two acres of land at Jessups, in Howard County. The purchase price of this property was $4,000, of which sum $2,600 was to be paid in cash, and the balance of $1,400 was to be secured by a second mortgage on the property. Not having any cash, the appellees applied to the First Mortgage Bond Homestead Association, Inc., one of the appellants, for a first mortgage loan of $2,600, and after inspecting the property and examining the title the association agreed to make this loan. Thereupon the owner conveyed the property to the appellees as tenants by the entireties, and they in turn conveyed it by way of mortgage to the association as trustee, to secure certain bonds or notes of varying amounts representing the first lien of $2,600, and also to secure a bond or note for $1,400, representing the second lien, all of said bonds or notes maturing in ten years.

The bonds representing the first lien were sold by the association to certain of its members at par and accrued interest, and the $1,400 bond was accepted by the original owner, Dr. Carter, in payment of the $1,400 balance due on the purchase price. At the time the appellees first applied for the loan, May 17th, 1920, they apparently signed a preliminary application in which it was stated, among other things, that they were to pay a bonus of $500 for the loan "to be carried in note and taken first out of dues," and there was a further provision that "the undersigned agree, if granted, to pay dues, semi-monthly, interest and expenses, dues $17, interest $11.44, E. & P. $4.06, ea. ½ mo. $32.50." The dues mentioned in this application represented the semi-monthly payments to be made by the appellees on forty-four shares of Class B stock of the association costing $104 per share, which the appellees subscribed to when they secured the loan. On July 12th, 1920, the mortgage was executed, the $500 bonus note, which was not secured by the mortgage, was signed, and the appellees also executed at that time what is termed a "sworn application for loan." This sworn application contains the following provisions:

"We also agree to pay for said stock in semi-monthly installments of $17.00 each on 1st and 3rd Mondays of each month hereafter." Then later, "That if the said First Mortgage-Bond Homestead Association, Incorporated, secures said loan for us, we agree to pay as a premium the sum of $500, payable on demand, and a commission of 2½%; and for all expenses of searching title, recording and preparing all necessary papers, all to be deducted in advance from the money borrowed.

"We further agree that the payments on account of our stock shall in no wise be a credit upon our bonds and said association shall be our agent in the creation of the sinking fund to meet this loan and not the agent of the bond-holders, with no risk or responsibility on the part of the person or persons advancing the money for this loan in any manner, and that the bonds issued by the applicants shall remain a lien for the full

amount thereof until the full amount is paid the bond-
holders all at one time.   We also agree to deposit in
addition to the installments aforesaid, on 1st and 3rd
Mondays of each month, hereafter, the sum of $11.44
as interest on said loan (to be paid by said association
each six months to the holders of our bonds), and the
sum of 1/26th part of the annual expenses on said
property semi-monthly, or $4.06 to pay the expenses
on said property such as taxes, water rent, ground
rent (if any), and fire insurance or such other sum
as may be necessary to meet said expenses.

"It is also understood and agreed that said associa-
tion will invest and keep invested all monies deposited
by us, in similar securities, and after we have deposited
on our stock the sum of $104, that the association on
each $104 so deposited will assume, if invested, the
interest on this amount, and the same may be de-
ducted from the semi-monthly payments of the appli-
cants, or added to the dues or the applicants hereby
elect the drop interest plan in lieu of our rights to
share in the profits of this association.

"It is also agreed that if the applicants shall fail
to pay any one or any portion of the aforesaid install-
ments at the time when they are payable, they agree
to pay to said association, as liquidated damages, the
sum of 4 cents per share per week for each default
for the breach of this contract."

The mortgage contains the following clause:

"And in order to create a sinking fund with which
to meet said bonds at maturity, the mortgagors have
agreed in said application to deposit regularly on said
stock in semi-monthly installments of $32.59 each,
being principal, interest and expenses, as particularly
set forth in said application, which is hereby made a
part of this mortgage, with said association, as their
depository until their stock has matured (with no
power of withdrawal in the mortgagors, and with no
risk or responsibility on the part of the bondholders
in any way) when it shall be paid by said association
to the bondholders upon presentation and cancellation

of their bonds and coupons or as hereinafter provided; and in order to secure the prompt payment of the said bonds and the interest coupons attached thereto, as they shall respectively become due and payable, the performance of the agreement to create a sinking fund and all other covenants and agreements contained in the application, the bonds and this mortgage, these presents are executed."

The bonds themselves contain the provision that the "mortgagors shall pay in full the principal sum in accordance with the terms of the application for the loan and the mortgage or deed of trust."

And the further provision that "it is also understood and agreed by the undersigned that the money deposited by them on their stock in said association, together with the interest and a proportionate part of the expenses on said property, in accordance with the terms of the application for this loan and the mortgage deed of trust which are hereby made a part of this obligation, shall be considered as a sinking fund to meet this bond, the interest coupons attached thereto and the expenses, when they shall respectively become due and payable."

At the time the mortgage and note were executed the appellees also owed a balance of $59.40 for conveyancing costs, including a $50 fee for examining the title to the property, so that on July 12th, 1920, they owed $4,000 under the mortgage, $500 on the bonus note, and $59.40 for expenses incident to the transaction, and on this they were to pay $32.50 semi-monthly, divided into $17 dues to apply on stock and to be placed in a sinking fund for the purpose of retiring the mortgage bonds or notes at maturity, $11.44 for interest on the bonds, which interest was to be adjusted from time to time under the drop interest plan in accordance with the amount paid into the sinking fund, and $4.06 for expenses, which included taxes and insurance on the property. The payments made by the appellees were entered in a pass book,

given them in lieu of separate receipts, and in the front part of this pass book the mortgage loan was set up, while the $500 bonus note and the $59.40 conveyancing expenses were consolidated and set up in the back of the book. In applying the payments made by the appellees, the association credited the mortgage account with the amounts paid for interest and expenses, but the payments made for dues were credited against the note and conveyancing costs, and at the time these proceedings were instituted $517.32 had been so credited.

The appellee Thomas B. Nelson was, in 1920, employed as a brakeman by the Baltimore and Ohio Railroad Company and earned about $160 per month. For a year or more after executing the mortgage he made the required payments with fair regularity, but his wife's sickness and other family expenses caused him to become less regular, and the last payment, made by him in February, 1925, only brought his payments up to August, 1924. In addition to this he did not always pay the full amount due, so that when he discontinued paying in February, 1925, he had only paid $2,042.52 instead of the $3,575.00 he should have paid. Accordingly in May, 1925, O. P. Baker, the attorney named in the mortgage, docketed a foreclosure suit, and the property was advertised for sale on June 17th, 1925. Prior to the sale the appellees filed a bill asking that the sale be enjoined, but the appellants' demurrer to that bill was sustained, the court holding that the averments of the bill did not comply with the provisions of section 16 of article 66 of the Code, which section relates to and regulates the enjoining of foreclosure sales. Thereafter the appellants advertised said property for sale on September 8th, 1925, and on September 7th, 1925, the appellees dismissed the suit filed by them to restrain the sale advertised for June 17th, 1925, and on September 8th, 1925, filed the bill in this case asking that the sale advertised for September 8th, 1925, be enjoined.

The bill alleges that the payments made by the appellees were missapplied to the bonus note, that the appellees tendered a certified check for the amount due on the first lien of $2,600, and on the refusal of the appellants to accept it placed the check in the hands of the clerk of court, paid the costs of the second advertisement of sale, and were prepared to pay the costs of the first advertisement as soon as they could ascertain the amount, and alleged further that the $1,400 bond secured by the second lien of the mortgage was held by one of their solicitors, who did not wish to press its collection at that time. The appellants demurred to the bill, and upon the demurrer being overruled they answered denying that the payments were wrongfully applied to the note, but stating that this application was in accordance with the agreement of the parties. They further stated that the entire matter is *res adjudicata,* that the alleged tender was refused because it was insufficient in amount and not made in legal form, that the association is responsible for the collection of the $1,400 bond, being trustee in the mortgage given to secure it, and finally alleging that the appellees cannot maintain the suit because, as members of the association, they are bound by a covenant not to bring any action against the trustee until after the directors and stockholders of the association have passed upon the complaint.

After a full hearing the learned court below decided all the questions thus raised in favor of the appellees, and from a decree perpetually enjoining the sale and requiring the association to accept a designated sum in full settlement of the amount secured by the first lien in the mortgage the appellants have appealed.

We do not see any merit in the contention that because a demurrer to the bill seeking to enjoin the first sale was sustained, and the bill subsequently dismissed by counsel for the appellees, the entire matter is *res adjudicata.* The opinion filed by the court in sustaining this demurrer shows that the sole ground for sustaining it was the failure of the bill to set out the facts which section 16 of article 66 of the

Code requires must be shown before a foreclosure sale will be enjoined. This opinion, and the order sustaining the demurrer, were not filed until July 29, 1925, so that the sale advertised for June 17, 1925, was necessarily prevented, and it accordingly became necessary to re-advertise the property. When this was done the appellees dismissed their first bill and filed the present one, and in this one the facts needed to comply with the provisions of section 16 of article 66 of the Code are alleged. The general rule covering situations of this kind is thus stated in 34 *Corpus Juris,* 797, 798: "A judgment rendered on a demurrer is equally conclusive, by way of estoppel, of the facts confessed by the demurrer, as would be a verdict and judgment finding the same facts. But a judgment on demurrer, based merely on formal or technical defects and raising only a question of pleading or want of jurisdiction, is no bar to a second action for the same cause. And where the ground of the demurrer is the omission of a material allegation from plaintiff's pleading, a judgment sustaining the demurrer will not prevent the maintenance of a new suit on the same cause of action, in which the declaration or complaint supplies the missing averment."

In the present case the action on the demurrer to the first bill of complaint did not go to the merits of the case, it simply determined that the allegations of that bill were insufficient. The second bill alleges certain additional facts, and these additional facts, under the rule above stated, serve, in our opinion, to prevent the action on the first bill from being an adjudication of the matters presented by this second bill. We also think these additional allegations are sufficient to comply with the statutory requirements above mentioned, and we accordingly find no error in the action of the lower court in overruling the demurrer to the bill now before us. See *Thrift v. Bannon,* 111 Md. 308; *Powell v. Hopkins,* 38 Md. 1; *Buckner v. Cronhardt,* 132 Md. 616; *Talbott v. Laurel Bldg. Assoc.,* 140 Md. 565.

Nor do we have any difficulty in disposing of the contention that the tender was not made in proper form. It is, of course, true that a certified check is not actual money and so

cannot be used in making a strict legal tender.  30 *Cyc.* 1207, 1212 to 1214.  But in this case it appears that there was an offer to pay the cash into court, and we concur with the statement of the learned chancellor, who, in disposing of this question, said: "It may be that the association had a right to refuse the tender, because it was not in actual money, if they assigned that, at the time, as the reason for its refusal. But it is not now a question of tender, or of proper tender. The money has been brought into court, in the form of a certified check, drawn to the order of the counsel for the association, and at the hearing of this case counsel for the plaintiff asked to be permitted to pay into court the actual cash, in lieu of the certified checks, for the amount admitted to be due, and costs of advertising the first sale, the costs of advertising the second sale having been paid by the plaintiffs."

The question of the sufficiency of the amount tendered, $2,029.76, depends largely upon whether the association had the right to apply the dues paid to the $500 bonus note, and to a lesser extent upon the method used in figuring the interest, and we will accordingly pass upon it later in considering these questions.

The covenant in the sworn application for the loan, prohibiting members of the association from bringing any action against the trustee until after the stockholders and directors of the association have passed upon the complaint, was not stressed in the briefs or at the argument, and we think it rather obvious that such a provision could not prevent the appellees from invoking the aid of a court of equity to stop the sale of their property.  The present suit is not so much an action against the association as it is an effort to prevent the association from taking action against the appellees.  The initial action was taken by the association and, without further prolonging the discussion of this phase of the case, we deem it sufficient to say that in our opinion the covenant in question does not cover the present suit of the appellees.  To hold otherwise would be to deprive the appellees of any remedy, because had they waited to complain to the stockholders and directors, the sale would doubtless have

taken place before the association acted on the complaint, and furthermore, its probable action was clearly indicated by the refusal of its general counsel to accept the amount tendered by the appellees, it being his contention that a greater amount was due. We accordingly think the appellees were justified in bringing this suit before appealing to the stockholders and directors of the association.

This brings us to a consideration of the really important question in the case, which is whether the association had the right to apply the dues paid by the appellees to the $500 bonus note, or whether they should, as contended by the appellees, have been applied to the mortgage.

The preliminary application for the loan, signed May 17th, 1920, provided that the dues could be applied to the note, but the sworn application for the loan executed with the mortgage on July 12th, 1920, provided that the bonus was "to be deducted in advance from the money borrowed." This second application contains in greater detail all the provisions found in the first one, except that authorizing the application of the dues to the bonus note, and there can be no doubt that the clause in the mortgage making the application a part of the mortgage refers to this second application executed simultaneously with the mortgage. In addition to this, counsel for the association stated at the trial below that the appellants relied on this second application. Under these circumstances it is clear that, so far as the written agreement between the parties is concerned, the association was not authorized to apply the dues to the bonus note. The general rule is that "where there are several contracts in the same matter of different dates or when one is plainly intended to supersede the other, the latter will control. So if there is a plain repugnancy between the provisions of an original contract and those of a supplemental one between the same parties and relating to the same subject matter, the earlier contract must yield to the later as far as the repugnancy extends." 13 *C. J.* 529. Under this rule the second application would prevail over the first, even if the attending circumstances did not make it abundantly clear that the second

was the one referred to by and made a part of the mortgage, and all doubts on the matter are entirely disposed of by the statement made at the trial below by the appellants' counsel, that they relied on the second application. Under this second application, the amount of the bonus note was to "be deducted in advance from the money borrowed," but as the sum borrowed ($2,600) was not sufficient to cover both the bonus and the cash part of the purchase price of the property, this provision could not be carried out, and the parties were accordingly left without any written agreement between them as to how the bonus note was to be paid. There was, however, a specific provision in the mortgage and the bonds that the payment of dues should be for the purpose of creating "a sinking fund with which to meet said bonds at maturity," and it is difficult to understand how, in the face of this provision, the association could do otherwise than apply the dues to the payment of the mortgage. The appellees were making all their payments under and because of the mortgage contract, and they certainly had the right (in the absence of any other agreement superseding the mortgage) to expect and require their payments to be credited in accordance with the terms and provisions of the mortgage. *Suter v. Ives,* 47 Md. 520.

In *Dickey v. Permanent Land Co.,* 63 Md. 170, 176, this Court said: "The rule in regard to the application of payments is well defined. At the time when payment is made there may be an application by agreement between debtor and creditor. If there be no such agreement, the debtor may make the application; and, in the absence of any action on his part, the creditor may apply the money to the extinguishment of any claim which he has against the debtor. If there has been no application by parties, the law will apply the payment in conformity with established and recognized rules. But the law never makes an application of payment when the parties have already done so." And see also *Jockey Club v. State,* 107 Md. 262, 265.

In the present case we do not have to inquire how the law would apply the payments made by the appellees, nor

how the appellees or the appellants could apply them in the absence of any agreement, because there was an agreement between the parties as to their application. That agreement was contained in the mortgage, under the terms of which the payments were made, and on both reason and authority that agreement must control. See *Suter v. Ives,* and other cases *supra.* It accordingly follows that the dues paid by the appellees should have been credited on the mortgage debt, unless there was a verbal agreement between the parties authorizing their application to the note, or unless the acquiescence of the appellees in the entry of these payments in the back of the pass book under "Note Account" by the officers and employees of the association now estops them from objecting to their application to the note. The record does not establish any verbal agreement regarding this matter, and we do not care to disturb the chancellor's finding that there was no estoppel. Nelson was a man of little education and with practically no business experience, while his wife was even less equipped than he was to understand a business transaction. They both testified that the pass book was in the possession of the officers of the association almost continuously, Nelson leaving it in the association's office as a matter of convenience, that they did not understand the entries in it when they did finally secure possession of it for the purpose of examining it, nor could their daughter, who was attending high school, make it out when she examined it. Perhaps they should have understood it, but in view of the specific provision of the mortgage that the dues were to be placed in a sinking fund and used to pay the mortgage debt at maturity, we do not think the mere acquiescence of the appellees in the method in which the association entered the payments in this pass book is sufficient, under the circumstances of this case, to estop them from insisting that the mortgage provision be carried out, and the payments applied in accordance with that provision.

There is some mention in the opinion of the lower court

of the contention that the mortgage made the trustee the agent of the appellees and not the agent of the bondholders in collecting the dues, and that hence the former were bound by the trustee's application of these payments to the note, but this point was not pressed at the argument and if it had been we could not sustain it.  In the first place it is doubtful if the mortgage provision making the trustee the agent of the appellees, so far as the sinking fund was concerned, could be construed to authorize the trustee to bind the appellees by applying the payments to anything save the sinking fund, and in the second place, even if this construction was permissible, this Court has already decided that after default the trustee in a mortgage similar to this one, and held by the same association which is one of the appellants in this case, becomes the agent of the bondholders "to enforce the security given for their protection."  See *First Mortgage Bond Homestead Assoc., Inc., v. Mehlhorn,* 133 Md. 439. According to the record, the appellees became in default almost immediately so far as the payment of dues was concerned, and hence the trustee was thereafter the agent of the bondholders to enforce their security, part of which was the money paid into or belonging to the sinking fund.

The final contention of the appellants that the association could not accept the amount due on the first lien and stop the sale of the property, because of its responsibility to the holder of the $1,400 second lien, is, under the circumstances of this case, entirely untenable.  The record shows that the bond representing this second lien is now in the hands of one of the counsel for the appellees, and it is in evidence that the present owner of this bond does not, at this time, want to enforce its collection by a sale.  If the association was not satisfied with the assurances of the appellees' counsel regarding this second lien, it could readily have asked for a formal disclaimer from the owner, and we think it should have done this rather than insist upon a sale.

In disposing of the case below the chancellor allowed the association $44.30 more than the amount tendered by the

appellees.    This increase represented additional interest which the chancellor's calculations showed to be due, and as no question has been raised concerning it, and the record shows that this additional sum has been paid into court by the appellees, we will not lengthen this opinion by examining the various methods in which the interest on this mortgage loan could apparently be computed.    We do think, however, that the association is entitled to the balance of $59.40 due for the conveyancing costs.    Mrs. Nelson stated that she and her husband understood that this item was to be paid by means of extra payments, and she stated further that extra payments sufficient to cover it had been made.    The pass book entries set out in the record apparently show that at least some extra payments were made, and while we cannot determine from those entries whether the entire balance was paid, we are of the opinion that Mrs. Nelson's testimony is sufficient to warrant our holding that the full amount was paid, and that hence the sum of $59.40 should not be credited on the mortgage.    In view of this the case will have to be remanded, with instructions to make the injunction perpetual upon the payment into court by the appellees of the sum of $59.40, said sum to be paid within such time as the learned chancellor below may direct.

> *Decree affirmed and case remanded, the injunction heretofore issued to be made perpetual upon the compliance of the appellees with the terms of this opinion, with costs to the appellees.*