MEYER BLANKMAN *v.* JOHN D. HOSPELHORN, RECEIVER.

[No. 53, October Term, 1939.]

*Decided December 13th, 1939.*

The cause was argued before BOND, C. J., OFFUTT,

Sloan, Mitchell, Shehan, Johnson, and Delaplaine, JJ.

*Edward L. Parlett* and *Lester H. Crowther,* for the appellant.

*Alexander Armstrong,* with whom where *Arthur W. Machen* and *J. Purdon Wright* on the brief, for the appellee.

Mitchell, J., delivered the opinion of the Court.

This is an appeal by the defendant from a judgment of the Superior Court of Baltimore City in favor of the receiver of the Baltimore Trust Company for $2420, representing the statutory liability on two hundred shares of stock of said company. The suit was originally instituted in the Court of Common Pleas of Baltimore City, in which court a demurrer to the declaration was overruled. Thereafter, upon the suggestion of the defendant, the case was removed to the Superior Court and, a jury trial being waived, was submitted to that court.

It appears from the record that, prior to the institution of the instant case, the receiver brought suit in the Court of Common Pleas against the defendant in this case and a certain Wilmer P. Smith, based upon a statutory liability with respect to the same certificates of stock mentioned herein. The declaration in the former case sets forth the due appointment and qualification of the plaintiff as receiver of the Baltimore Trust Company in the Circuit Court No. 2 of Baltimore City, and the passage, on November 13th, 1935, of a decree of said court whereby the said receiver was clothed with full power and authority to liquidate all the assets of the said company at the time of his appointment, and to collect, under the direction of said court, the statutory liability of the stockholders; which liability, by the decree of said court, was assessed at the sum of ten dollars per share on all the capital stock of said company, the same being its par value; said assessment being adjudged by said court to be necessary to meet the statutory liability of stock-

holders to creditors, and the receiver being authorized and directed by said decree to collect from said stockholders severally, and to institute such proceedings as might be necessary in the premises; and thereupon alleges that on September 11th, 1931, two hundred shares of the stock of the Baltimore Trust Company were purchased for the account of the defendant Meyer Blankman by the brokerage firm of J. Harmanus Fisher & Sons; that at the time of said purchase the said shares of stock were registered in the name of the defendant Wilmer P. Smith, said Wilmer P. Smith at that time being an employee of said Fisher & Sons; that upon receipt of said shares of stock by the brokerage firm the same were delivered, placed and put into the possession of said Blankman, and were intended to become and did become the property of the latter defendant; that on the 4th day of March, 1933, the defendants Smith and Blankman were the holders and owners of said shares of stock, of the par value of ten dollars per share, and ever since had continued to hold and own the same.

To that declaration a demurrer was interposed by the defendant Meyer Blankman, the substantial issue raised by the demurrer being that the declaration was defective because of a misjoinder of the defendants Blankman and Smith. The trial court having sustained the demurrer, and the plaintiff having declined to amend the declaration, upon appeal the action of the lower court was affirmed; this court holding that the allegations of the declaration did not show any ground upon which there could be a joinder of the two defendants. *Hospelhorn v. Blankman*, 174 Md. 277, 198 A. 598.

Following that decision, the receiver voluntarily dismissed the proceeding as to Smith; and thereupon the present suit was filed against Blankman alone, the allegations of the new declaration being substantially the same as those contained in the declaration filed in the former suit, with the amplification that on October 17th, 1931, the defendant reimbursed Fisher & Sons for the purchase price paid by them for said stock, together with com-

missions on said purchase; that on said date Fisher & Sons delivered to the defendant two certificates representing the two hundred shares of stock, the same being endorsed by Smith in blank; and that the defendant became and was the true owner of the stock and has so remained continuously, notwithstanding that the defendant never caused the same to be transferred on the books of the company from the name of Smith to his own.

Briefly, the grounds for the demurrer to the above declaration are as follows: (a) That it fails to allege any facts which give the plaintiff a cause of action against the defendant; (b) that it fails to allege an agency between Smith, the record or registered owner of the shares of stock, and the defendant; (c) that it fails to allege facts to show that the defendant had any interest in or ownership of the stock; (d) because it appears on the face of the declaration that the defendant is not the record or registered owner of the stock, and (e) that the subject matter in controversy is *res judicata.*

At the trial below the plaintiff offered testimony tending to support the allegations of the declaration. The defendant offered in evidence the record from the Court of Common Pleas and the record from the Court of Appeals in the previous case, contending that the questions involved in the case then on trial were *res judicata* by reason of the decision in the former case; and upon objection that these records failed to show a final decision upon the merits of the former controversy, the same were rejected. The defendant in the instant case offered no further evidence; and the exceptions bring before us for review the rulings of the court in (a) excluding the above evidence, and (b) rejecting the five prayers offered by the defendant.

Section 72 of article 11 of the Maryland Code, under which the liability of the defendant is claimed, and which was in force at the time of the above mentioned purchase of stock, provides: "Stockholders of every bank and trust company shall be held individually responsible, equally and ratably, and not one for another, for all con-

tracts, debts and engagements of every such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such stock. * * * and the liability of such stockholders shall be an asset of the corporation for the benefit ratably of all the depositors and creditors of any such corporation, if necessary to pay the debts of such corporation."

It is urged by the appellant that under this section a suit to enforce the statutory liability against the stockholders of an involved bank or trust company can only be directed against registered stockholders, and for that reason the liability cannot be enforced against the appellant, because the stock which is the subject of this suit is registered on the books of the Baltimore Trust Company in the name of the said Wilmer P. Smith; and based upon this contention, the appellant submits that the trial court was in error in overruling his demurrer.

Due to an unprecedented economic crisis which reached its climax in this country in 1933, questions relating to the liability of stockholders in insolvent or involved banks and trust companies have been the source of much litigation in recent years. In consequence of that situation this court has considered other cases wherein there is a striking analogy between the facts there involved, and the facts in the case now before us. The case of *Hospelhorn v. Poe,* 174 Md. 242, 198 A. 582, is illustrative of that observation, and in the lucid opinion of Judge Parke delivered in that case the law with reference to the subject of statutory liability of stockholders, as it existed in this state, is carefully reviewed. Section 72, article 11, *supra,* was there construed in connection with section 71M of the Act of 1933, ch. 46, commonly known as the Emergency Banking Act, which went into effect on March 4th, 1933, and was enacted as section 71M of article 11 of the Code of Public General Laws of Maryland.

The above section of the Code expressly provided that nothing contained in chapter 46 of the Acts of 1933 should be construed to relieve any stockholders of record in any banking institution at the time of the

passage of the Act from the liability imposed by section 72 of the article; and further provided that any person who was a stockholder in such institution at the commencement of its period of custody by the Bank Commissioner of the State, and the subsequent transferee of record of said stock at the time the statutory liability for assessment became enforceable, would become jointly and severally liable to the receiver for such assessment on the shares of stock so held.

In other words, the Emergency Banking Act, while not prohibiting the transfer of the stock in a banking institution during the period of custody of the Bank Commissioner, nevertheless was designed to hold the transferor to his statutory liability, notwithstanding that he had assigned his stock of record, and that under the provisions of section 72 of the article, as well as the provisions of the act, the transferee also became liable. Stated differently, had the transfer from Smith to the appellant been registered upon the books of the Baltimore Trust Company in due course, in 1931, the time at which the certificates of stock were admittedly endorsed by Smith in blank and delivered to him, the transaction being in good faith, Smith would have been entirely relieved of liability, and the appellant would now be solely liable, or jointly liable with any subsequent transferee of his stock. The question here raised is, can the appellant be absolved from liability by his failure, designedly or otherwise, to effect the transfer of his stock on the books of the Baltimore Trust Company?

That question does not appear to have been decided by this court. However, in *Allender v. Ghingher*, 170 Md. 156, 161, 183 A. 610, 613, in defining the liability of stockholders, we said: "This act (section 72, article 11), to which these quotations from the cited opinions have reference, is for all practical purposes so nearly identical with section 63, title 12, U. S. Code Ann. (the National Banking Act), as to leave no reasonable doubt that in its enactment the language of the former act was adopted, and it may be inferred that it was done for producing

uniformity in liability of the two classes of stockholders. In the absence of any construction of such statute by this courts, decisions of the federal courts, construing it over a period of many years, are entitled to great weight, and should be given effect, unless they contravene some established policy of the state."

Section 5151 of the U. S. Revised Statutes, the National Banking Act, 12 U. S. Code Ann. sec. 63, which, as indicated, is similar to the Maryland stockholders' liability law, has been construed by the United States Supreme Court in numerous cases, among them being *Pauly v. State Loan & Trust Co.*, 165 U. S. 606, 623, 17 S. Ct. 465, 471, 41 L. Ed. 844, 850, in which it was said: "The object of the statute is not to be defeated by the mere forms of transactions between shareholders and their creditors. The courts will look at the relations of parties as they actually are, or as, by reason of their conduct, they must be assumed to be, for the protection of creditors. Congress did not say that those only should be regarded as shareholders, liable for the contracts, debts, and engagements of the banking association, whose names appear on the stock list distinctly as shareholders. * * * As already indicated, those may be treated as shareholders, within the meaning of section 5151, who are the real owners of the stock."

In *Early v. Richardson*, 280 U. S. 496, 50 S. Ct. 176, 177, 74 L. Ed. 575, it was held: "That the actual owner of the stock may be held for the assessment, although his name does not appear upon the transfer books of the bank, is well settled."

And in *Ohio Valley National Bank v. Hulitt*, 204 U. S. 162, 167, 27 S. Ct. 179, 181, 51 L. Ed. 423, 426, it was said: "Assuming then, the established doctrine to be that the mere pledgee of national bank stock cannot be held liable as a shareholder so long as the shares are not registered in his name, * * * we deem it equally settled, both from the terms of the statute attaching the liability and the decisions which have construed the act, that the

real owner of the shares may be held responsible, although in fact the shares are not registered in his name. As to such owner the law looks through subterfuges and apparent ownership and fastens the liability upon the shareholder to whom the shares really belong."

For the reasons assigned in *Hospelhorn v. Poe, supra,* this court, in disposing of the case of *Hospelhorn v. Blankman, supra,* definitely held that under the facts in the latter case, which facts are identical with the facts in the instant case, Wilmer P. Smith, as the registered owner of the stock, is liable for the payment of the assessment; but it did not say, nor can it by implication be construed, that at the same time Blankman, the appellant in this case, is not also liable.

Concretely, therefore, the issues raised by the various rulings complained of in the instant case are resolved into two basic questions: (a) Can a suit against the true owner of stock, even though that stock be registered in the name of another, without qualification, be maintained? And: (b) Does the doctrine of *res judicata* apply in said case? For the reasons stated, our answer to the first subject of inquiry is in the affirmative.

Turning now to the second subject of inquiry, in the former case the demurrer was directed to the formal and technical defect of misjoinder apparent upon the face of the declaration, and the ruling in that case did not dispose of it upon the merits. In 37 *C. J.* 797, 798, it is said: "A judgment rendered on a demurrer is equally conclusive by way of estoppel of the facts confessed by the demurrer as would be a verdict and judgment finding the same facts. But a judgment on demurrer based merely on formal or technical defects and raising only a question of pleading or want of jurisdiction, is no bar to a second action for the same cause." To the same effect, in 2 *Freeman on Judgments,* sec. 745, it is said: "Where the judgment on demurrer does not determine the merits of the case, as where it goes to the form of the action, to a defect of pleading, misjoinder of parties

or of causes of action, or to the jurisdiction of the court, it is not a bar. It is conclusive only as to the exact point raised and decided and of those matters necessarily involved in that decision."

The exact point decided in the former case, as appears from the decision of this court therein, was: "The allegations of the declaration do not show any ground upon which there can be a joinder of Blankman, and for this misjoinder the court sustained the demurrer of Blankman. The ruling is sound, and the judgment in favor of Blankman will be affirmed." *Moodhe v. Schenker*, 176 Md. 259, 4 A. 2nd 453.

It follows, therefore, that the refusal to admit in evidence the record of the former case was correct; as was likewise the rejection of the appellant's third, fourth, and fifth prayers, predicated as they were upon the theory that such evidence should have been admitted.

The first prayer is bad in that, while it purports to be a variance prayer, the particular phase of pleading with which the proof is supposed to be at variance is not set out, and was therefore also properly rejected.

Finally, as the ground upon which the second prayer, which sought a directed verdict for the defendant, relate to questions which have been already disposed of, it must follow that there was no error in the court's refusal to grant that prayer.

As the views herein expressed are decisive of the substantial questions raised by the demurrer to the declaration, a separate discussion thereof becomes unnecessary, and our conclusion is that the action of the lower court in overruling the same was likewise without error.

> *Judgment affirmed, with costs to the appellee.*