## SURREY INN, INC. v. JENNINGS

[No. 95, September Term, 1957.]

*Decided February 13, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*W. Lee Harrison* and *Robert E. Cahill,* for appellant.

*Elmer L. Reese, Jr.,* and *H. Anthony Mueller,* with whom were *Proctor, Royston & Mueller* and *Preston A. Pairo, Sr.,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

Bruce R. Jennings, the plaintiff-appellee, recovered a judgment in the Circuit Court for Baltimore County in the amount of $12,442.28 against the defendant-appellant, Surrey Inn, Inc., and the latter appeals. The suit was brought on two of the common counts—money lent and accounts stated —and was particularized as being based upon amounts loaned or advanced as follows: $3,500 on March 5, 1951; $6,000 on June 1, 1951; and $264.18, on October 22, 1951. Interest at 6% was claimed in the statement of account on each of the three advances, but the claim for interest on the third item was later abandoned.

The sole question on this appeal (apart from the $264.18 item) is whether or not the appellee is barred by *res judicata* from maintaining this suit. The appellant bases its contention that the appellee is so barred on three prior suits in which Jennings and Surrey Inn, Inc., ("Surrey Inn") were also the parties.

The facts which underlie all of this litigation are briefly these: Three individuals, John S. Gough, C. Nelson Eby and G. William Hammond, organized Surrey Inn, Inc., and each became the owner of one-third of its stock. When the corporation was nearly ready to open its restaurant business, it was in serious financial straits, and the three stockholders appealed to Jennings for assistance. Jennings then lent the sum of $3,500. He took a confessed judgment note, dated March 5, 1951, with interest at $30 per month (a little over 10% *per annum*). This note had the name "Surrey Inn, Inc." typed at the top, and the corporate seal was impressed thereon. The body of the note, however, started out with

"On demand after date we promise to pay to the order of * * * Jennings," and at the foot of the note appeared "Witness our hand and seal" and the signatures of the three individuals, Gough, Eby and Hammond. The name of Surrey Inn, Inc., did not appear as a maker of the note, nor did any of the individuals sign as an officer of the corporation. The $6,500 note, dated June 1, 1951, was identical in form with the first note except as to interest, which was to be at the rate of 6% *per annum*.

The $3,500 advanced on the first loan was paid by Jennings' check drawn to the order of the three individuals named above, and it was endorsed by them and the proceeds were deposited in the Surrey Inn's bank account. The second advance of $6,500 was also made by Jennings' check, but this check was made payable directly to Surrey Inn and was also deposited in the same account. The advance of $264.18 was made by Jennings paying that amount to an oil burner dealer, which had installed much needed heating equipment in Surrey Inn. This had been obtained on Jennings' credit. When the bill became payable, Surrey Inn informed Jennings that it did not have the money to pay it, and Jennings paid it.

On May 1, 1953, the three individuals who had executed the notes of March 5 and June 1, 1951, executed three new confessed judgment notes payable to Jennings. These were in the same form as the earlier notes, except that they did not provide for interest thereon. One of the new notes was in the amount of $3,000 and was intended to "settle" for interest accrued and unpaid up to May 1, 1953, and for interest which might accrue thereafter on the indebtedness to Jennings. Another was in the amount of $9,500 and represented the sum of the principal amounts of the two original notes. The third note was for $264.18 and was to cover the amount expended by Jennings for the oil burner. All of the notes (both those executed in 1951 and those executed in 1953) were prepared by Jennings.

The litigation upon which the defendant rested its defense of *res judicata* is outlined below.

In December, 1954, Jennings filed a bill in equity in the

Circuit Court for Baltimore County (Case No. 35742) for the appointment of a receiver for Surrey Inn. He brought his suit as a creditor on a claim in the amount of $12,764.18 "evidenced" by the three promissory notes dated March 1, 1953. The defendant demurred to the bill on several grounds, one of which was that "it affirmatively appears from the exhibits filed in this case [copies of the three confessed judgment notes of May 1, 1953] that this Respondent is not indebted to the Complainant." The demurrer was sustained by Judge Kintner on May 9, 1955. No opinion was filed, but testimony at the trial of the present case was to the effect that his ruling was based upon the ground that the notes indicated an indebtedness of the three individual signers, and not of the corporation, Surrey Inn. The amendment to the bill in equity made by the complainant on May 14, 1955, tends to confirm this explanation, since the bill as then amended asserted a claim in the same amount as before, but omitted any reference to the notes and stated Jennings' claim to be "for money loaned and advanced on May 1, 1953". Surrey Inn again demurred on precisely the same grounds as before. Its demurrer to the amended bill was sustained by Judge Barrett on June 8, 1956, in an opinion in which he held, on the authority of *Frigidraft, Inc. v. Michel*, 198 Md. 509, 84 A. 2d 695, that a creditor who had neither reduced his claim to judgment nor acquired a lien on the property of the defendant corporation, could not maintain a bill for the appointment of a receiver. Judge Barrett's opinion did not expressly either grant or deny leave to the complainant to amend his bill further.

On February 28, 1956, while the receivership suit was pending (and perhaps having a premonition as to its outcome), Jennings instituted two separate proceedings at law (Cases Nos. 36221 and 36222) in the Circuit Court for Baltimore County against Surrey Inn, and judgment by confession was entered in Jennings' favor in each case. These suits were brought, respectively, on the $3,000 and the $9,500 confessed judgment notes dated May 1, 1953, above described, and each declaration contained only one count based upon the

note involved.[1] On motion of the defendant these confessed judgments were stricken out, and the defendant then demurred to each declaration. These demurrers were heard by Judge Barrett on the same day as the demurrer to the amended bill in the receivership suit and all three were decided on the same day, June 8, 1956. Judge Barrett filed a single opinion covering both of the lawsuits, in which he sustained the demurrers on the ground that the notes, on their face, indicated that they were the obligations of the three individuals who executed them, and not of the corporation. As in the equity case, Judge Barrett did not expressly grant or deny leave to the plaintiff to amend.

Jennings made no effort to amend in either of the confessed judgment note cases or in the equity suit, nor did he appeal in any of these cases. He instituted the present suit on June 26, 1956, eighteen days after the rendition of Judge Barrett's opinions sustaining the demurrers in the earlier cases.

The appellant rests its defense of *res judicata* upon the proposition that this defense applies not only to matters which were decided in the former litigation, but also to grounds of recovery (or defense) which might have been, but were not, there presented. It cites *Hill v. McConnell*, 106 Md. 574, 68 A. 199, and *Bernstein, Cohen & Co. v. Stansbury*, 119 Md. 316, 86 A. 349, as Maryland authorities supporting this rule. Other and more recent cases in this State which might have been added are *Moodhe v. Schenker*, 176 Md. 259, 4 A. 2d 453; *Snodgrass v. Stubbs*, 192 Md. 287, 64 A. 2d 130; *Sterling v. Local 438, etc.*, 207 Md. 132, 113 A. 2d 389; *Whittle v. Board of Zoning Appeals*, 211 Md. 36, 125 A. 2d 41.[2]

To sustain the defense of *res judicata* the appellant offered:

---

1. Jennings also brought a suit in the People's Court of Baltimore County on the $264.18 confessed judgment note. That suit appears never to have been disposed of, and it presents no question of *res judicata*.

2. The still more recent case entitled *"Ex Parte Carlin"*, 212 Md. 526, 129 A. 2d 827, deals with the application of *res judicata* to splitting a cause of action.

in evidence the original records in the equity suit (No. 35742, above referred to) and in the suit at law on the $9,500 confessed judgment note (No. 36222). It also offered in evidence a copy of the $3,000 note upon which the other confessed judgment note suit (No. 36221) in the Circuit Court was based, but for some reason not clear to us, the record in that case was not offered in evidence in the present suit. Both parties seem to have treated it as being in the same situation as Case No. 36222, and Judge Barrett's opinion sustaining the defendant's demurrers was applicable to both cases and was so captioned. In these circumstances we shall treat these two suits on confessed judgment notes as the parties have done—that is, as having followed the same course. In the absence of any proof so indicating, we should not deem it proper to assume that proceedings in Case No. 36221 reached a more definitive stage than did the proceedings in Case No. 36222.

We shall first consider briefly the effect of the equity suit; and although there was no order dismissing the bill nor an order sustaining the demurrer and expressly denying leave to amend further, we shall assume (without deciding) that the order sustaining the demurrer to the amended bill amounted to a final decree. It went to the heart of the complainant's right to maintain his bill for the appointment of a receiver, and held that he, as an unsecured creditor holding no judgment and no lien, could not maintain the suit. That, we think, is all that the equity suit did determine. It did not determine whether or not Jennings was a creditor of Surrey Inn; that was admitted by the demurrer for the purpose of determining Jennings' right to maintain the suit. Nor did the ruling on the demurrer to the original bill determine whether or not Jennings was a creditor of Surrey Inn; the ruling on that demurrer merely determined that Jennings could not sustain a claim against Surrey Inn on the basis of the three notes of May 1, 1953, which had been executed by three individuals.

Thus, neither of the decisions on demurrer in the equity suit went so far as to determine the question of Surrey Inn's liability to Jennings for money lent, and the equity suit does

not constitute a bar to Jennings' present suit to enforce that liability. *First Mortgage Bond Homestead Asso. v. Nelson,* 151 Md. 181, 135 A. 139; *Blankman v. Hospelhorn,* 177 Md. 442, 9 A. 2d 831; *Livingston v. Stewart & Co.,* 194 Md. 155, 69 A. 2d 900; *Goertz v. Backman,* 195 Md. 450, 74 A. 2d 3.

It was suggested in a colloquy during the trial that Jennings might have sought a monetary decree against Surrey Inn in the receivership case and that his failure to have done so might bar his present suit; but no such contention is seriously pressed here, nor do we see how Jennings could have successfully asserted such a claim in the receivership suit. The very reason for the ultimate failure of that suit was his lack of a judgment or lien. An attempt to obtain a monetary decree could not have been an incident to a non-existent equitable right. Nor could an attempt to obtain such a decree for mere non-performance of a contract (in this case to pay an indebtedness) confer equitable jurisdiction when there was an adequate remedy at law. *Musch v. Underwood,* 179 Md. 455, 19 A. 2d 699; *Becker v. Lipps Co.,* 131 Md. 301, 101 A. 783; *Hopkins v. Hopkins,* 86 Md. 681, 37 A. 371; *Johnson v. Md. Trust Co.,* 176 Md. 557, 6 A. 2d 383. It is hardly necessary to note that one of the grounds for the demurrers in the equity suit was the existence of an adequate remedy at law. We may add that we understood from the appellant's argument in this Court that the appellant conceded that the receivership suit was not sufficient to establish the bar of *res judicata* in the instant case.

The appellant's real reliance for its defense of *res judicata* is on the two confessed judgment suits in the Circuit Court and it urges strongly that any matters which could have been brought into those suits, or either of them, whether originally or by amendment, is barred quite as effectually as if they had actually been so brought in. Specifically, the appellant urges that the indebtedness upon which the present suit is founded could have been included under the common counts as claims for money lent and that such counts could have been joined with the special counts on the notes originally or could have been added by amendment after the demurrers were sustained. We agree with the appellant that they could

have been so joined or added. 1 *Poe, Pleading and Practice* (Tiffany's Ed.) Sec. 583; *McSherry v. Brooks,* 46 Md. 103; *Councilman v. Towson Bank,* 103 Md. 469, 64 A. 358; Code (1951), Art. 75, Sec. 4, and General Rules of Practice and Procedure, Part Two, III, Rule 2 (a), both in force when the confessed judgment suits and the present suit were filed. Cf. present Md. Rule 340 b 2 (b), expressly authorizing the joinder of common counts and special counts. Whether or not failure to add counts for money lent or an account stated would or would not raise the bar of *res judicata* is another question. It has not been so held in any case in this court so far as we are informed or so far as our researchers have disclosed.

Both parties appear to have assumed that the rulings on the demurrers in the confessed judgment note cases were such judgments as would permit the invocation of the rule of *res judicata,* at least as to the matters actually decided, as the appellee would limit their effect, or as to all matters which might have been litigated, as the appellant contends. The actual record in Case No. 36222, pertaining to the $9,500 note of May 1, 1953, was offered in evidence and is included in the transcript in the present case. Our examination of it does not support the above assumption. The full record in Case No. 36221, pertaining to the $3,000 note of May 1, 1953, purporting to "settle" interest, is not before us. We think it reasonable to suppose that the two parallel confessed judgment notes followed the same course, and the briefs, we think, support such an inference. We cannot, however, go farther and infer that proceedings in the case where the record was not offered in evidence went beyond those in the case where the record is before us. If it did so, the burden would, we think, be upon the defendant to establish such a fact as a part of its affirmative defense, and this it has not done.

It is fundamental to the application of the doctrine of *res judicata* that there must previously have been some final adjudication. This is succinctly stated in *Restatement, Judgments,* § 41, headed "Requirement of Finality": "The rules of res judicata are not applicable where the judgment is not

a final judgment." Decisions of this Court are in accord with the Restatement: *Christopher v. Sisk,* 133 Md. 48, 51, 104 A. 355; *Myers v. Gordon,* 165 Md. 534, 170 A. 186; *Wiley v. McComas,* 137 Md. 637, 113 A. 98; *Seaboard Terminals Corp. v. American Oil Co.,* 169 Md. 369, 181 A. 746; *Horowitz v. Horowitz,* 175 Md. 16, 199 A. 816; *Ugast v. LaFontaine,* 189 Md. 227, 55 A. 2d 705; *Goertz v. Backman,* 195 Md. 450, 74 A. 2d 3; *Lake Falls Ass'n v. Board of Zoning Appeals,* 209 Md. 561, 121 A. 2d 809.

The record in Case No. 36222 fails to show the entry of any final judgment following the ruling sustaining the defendant's demurrer. Comment a under § 41 of the *Restatement, Judgments,* states that an "order sustaining or overruling a demurrer is not a final judgment, although a final judgment may be entered thereafter on the order." This rule has been repeatedly recognized by this Court in determining whether or not an order is appealable. See *O'Keefe v. Scott,* 198 Md. 310, 83 A. 2d 860; *State, Use of Bohon v. Feldstein,* 207 Md. 20, 113 A. 2d 100; and *Imbach, Inc. v. Deegan,* 208 Md. 115, 117 A. 2d 864, and cases cited in each of the decisions just referred to.

It was also recognized and applied in determining the availability of a plea of *res judicata* in *State, Use of Staylor v. Jenkins,* 70 Md. 472, 17 A. 392, a case which is similar to the present case. It differs from the present case in that the plaintiffs in the first suit there involved actually dismissed that suit after an adverse ruling on a demurrer, instead of both parties leaving the first suit to wither on the vine, as in the present litigation. It also differs from the present case in that the demurrer in the prior litigation went to the heart of the plaintiffs' case; but neither in the first suit there involved nor in the earlier suit at law here involved was a final order entered after the order sustaining a demurrer. In *State, Use of Staylor v. Jenkins, supra,* the defendants pleaded *res judicata* and the plaintiffs replied thereto *nul tiel record.* The trial court ruled against the plaintiffs on this replication and the Court of Appeals reversed that judgment. Judge Irving, speaking for the Court, said in part (70 Md. at 478-479): "According to the prevailing practice in this

State, the entry of demurrer sustained, is but the announcement of the opinion of the Court upon the question raised by it; and until formal entry of judgment thereon, the case remains open for amendment or trial of other issues which may be in the case. *Evans' Practice,* 2nd Ed., 358; *Riddell and Wife v. Douglas,* 60 Md., 337. * * * The entry of 'demurrer sustained' was not a judgment upon which execution for costs could go; or on which an appeal could have been taken. It did not authorize the extension of the judgment by the clerk as he has it in the exemplification record in evidence; and, therefore, did not possess those elements of a *final judgment* to make the decision on the demurrer in that case conclusive in any future litigation between the parties."

We think that the absence of a final judgment in the confessed judgment suits makes the defense of *res judicata* unavailable to the defendant in the present case.

Since this holding disposes of the defense of *res judicata,* we need not determine whether or not, if there had been a final judgment in either or both of the earlier actions at law, the defense of *res judicata* would be sustainable on the record in this case because of the failure of the appellee to amend his prior suit so as to present the claim asserted in the present case.

We find no merit in the appellant's contention with regard to the $264.18 item for the cost of the oil burner. If (as we do not decide) Jennings was a mere volunteer in paying for it, the transaction appears to have been fully ratified by the corporation in including this amount among its liabilities to Jennings, as shown by its own books. There is no doubt that Surrey Inn received the benefit of the transaction.

*Judgment affirmed, with costs.*